311 So.2d 584 (1975)
Jack L. WILKINSON et al., Plaintiffs-Appellants,
v.
AMERICAN INSURANCE COMPANY OF NEWARK, NEW JERSEY, et al., Defendants-Appellees.
No. 4909.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
*585 McLure & McLure, by T. C. McLure, Jr., Alexandria, for plaintiffs-appellants.
Stafford, Pitts & Stafford, by John L. Pitts, Alexandria, Marshall W. Wroten, Baton Rouge, Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, Bernard Kramer, Alexandria, for defendants-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Jackie Sue Wilkinson and her father, Jack L. Wilkinson, seek to recover damages for injuries sustained by Miss Wilkinson, *586 and for medical and other expenses incurred, as the result of a motor vehicle collision. The defendants are: (1) Thomas E. Hill, Jr., administrator of the Estate of the late Thomas E. Hill, III, driver of the automobile in which Miss Wilkinson was riding; (2) American Insurance Company of Newark, New Jersey, insurer of Thomas E. Hill, III; (3) Joseph Ribaul Transfer Company, Inc., owner of the truck involved in the collision; (4) Charlie Banks, Jr., employee of Ribaul and driver of the truck; (5) The Continental Insurance Company, New York, New York, insurer of Ribaul and Banks; and (6) State of Louisiana, Department of Highways.
Judgment was rendered by the trial court: (1) In favor of Miss Wilkinson against Hill, as administrator, and American Insurance Company for $10,000.00; (2) in favor of Miss Wilkinson against Hill, as administrator, for $104,285.31; (3) in favor of Jack L. Wilkinson against Hill, as administrator, for $10,000.00; and (4) in favor of defendants, Ribaul, Continental Insurance Company and Department of Highways, rejecting plaintiffs' demands against those defendants. Plaintiffs appealed.
American Insurance Company has paid the amount of the judgment rendered against it, with interest and costs, that being the full amount of the coverage in the policy which it issued to Hill, and on this appeal plaintiffs do not seek to recover any additional amount from that defendant.
Two issues are presented. One is whether defendants, Banks, Ribaul Transfer Company and the Department of Highways, were negligent, and thus whether any or all of said defendants, together with Continental, are liable for the damages sustained by plaintiffs. The other issue is whether the awards made by the trial court should be increased.
The accident occurred at about 5:15 P. M. on March 26, 1970, on U.S. Highway 167 in Grant Parish, Louisiana. The weather was clear, the highway was dry and visibility was good. The highway at that point is a two-lane, concrete, rural highway, running north and south. The paved portion of the road was 24 feet wide, and there were shoulders about ten feet wide on each side of the slab. The shoulders were graveled and were in good condition when the accident occurred. The speed limit was 60 miles per hour for automobiles and 50 miles per hour for trucks.
At the time of the collision, Miss Wilkinson was riding as a passenger in an automobile being driven by the decedent, Thomas E. Hill, III. Hill was driving south on the above highway, and immediately before the accident he attempted to overtake and pass a truck-trailer which also was traveling south on the highway just ahead of him. While Hill was in the passing lane and was about even with the cab of the truck, he saw a northbound automobile round a curve in the highway ahead of him and approach the southbound Hill car in the same lane of traffic the latter was occupying. Hill then, in an attempt to avoid a head-on collision with the northbound car, applied his brakes and turned to his left onto the east shoulder of the road. At about the same time, however, the northbound vehicle also turned onto the east shoulder. Hill thereupon turned back to his right and accelerated the speed of his car in an effort to complete his passing maneuver and to get ahead of the truck before he met the oncoming northbound vehicle. Hill succeeded in getting off the east shoulder and onto the concrete slab, but his car began sliding sideways in a southwesterly direction, and it rolled or skidded into the southbound lane of traffic in front of the truck. While his car was skidding or traveling in that lane, and was facing west, the front of the truck struck the right side of the Hill car. The truck then veered to its right, and it pushed the car a distance of 100 to 125 feet to a point off the west side of the highway where the vehicles came to rest, with the Hill car pinned between the *587 truck and a tree. Hill was killed instantly, and Miss Wilkinson sustained severe injuries as a result of the accident.
The truck-trailer combination involved in this accident was owned by defendant Ribaul, and it was being driven by Ribaul's employee, Charlie Banks, Jr. It was 48 feet long, was equipped with 18 tires and was carrying a load of lumber which weighed 38,000 pounds. The truck remained in the southbound lane of traffic from the time Hill started to pass it until the accident occurred. The collision took place in the southbound lane.
Shortly before the decedent began his passing maneuver, his car and the Ribaul truck went over the crest of a hill, and the vehicles traveled downhill from that point to the place where the accident occurred. An "S" curve began about 1400 feet south of the crest of the hill, making it necessary for a southbound motorist first to turn slightly to his left and then somewhat sharply to his right. The road was straight between the hill and that curve. The highway was marked with a yellow line, indicating a "no passing zone" for southbound motorists as they traveled over the hill from the north, and that line terminated near the crest of that hill. Another "no passing zone" for southbound motorists began near the north end of the "S" curve, and it continued south through those curves. The "passing zone" between the crest of the hill and the above "S" curve was 1318 feet long. Although the vehicles were traveling downhill immediately before and at the time of the accident, the evidence shows that there was very little slope of the highway at that point. One witness described it as a "slight" downhill grade. A state trooper said the road at that point was "more or less flat and level."
The evidence shows that Hill did not begin his passing maneuver until after he had passed the crest of the hill and had traveled a distance of 100 to 350 feet into the passing zone. The collision occurred between the first and the second curves which formed the "S" curve, that is, it occurred after the vehicles had begun to negotiate that curve. There was a yellow line indicating a "no passing zone" for southbound motorists at the point where the Hill car crossed from the east shoulder to the southbound lane of traffic in front of the truck, and at the point where the collision occurred.
Plaintiffs contend that Banks, the driver of the truck, was negligent in driving his vehicle at an excessive rate of speed, in accelerating as Hill attempted to pass, and in failing to reduce the speed of that vehicle and to drive it onto the right shoulder of the highway when he observed that Hill was having difficulty in passing it.
Banks testifed that he was traveling at a speed of about 30 to 35 miles per hour when Hill undertook to pass him. Miss Wilkinson stated that Hill was driving about 60 miles per hour as he came up behind the truck, and that he had to slow down in order to stay behind the truck until he came to a passing zone. She also stated that although Hill continued to accelerate as he was passing the truck, he didn't seem to be able to "make any more headway" after they reached the body of the truck, but that the Hill car was even with the cab of the truck when she saw the northbound car round a curve in front of them.
The truck driver stated that Hill did not attempt to pass the truck until the vehicles reached the "S" curve. He saw the northbound motorist round the curve ahead of him and begin zigzagging in the road, and he thereupon let up on his accelerator. He stated that he thought Hill would drop back behind the truck in order to avoid a collision with the vehicle he was meeting. The next thing Banks observed was the Hill car "right in front of me turning over," and he stated that at that time he "locked" the brakes of the truck-trailer in an unsuccessful effort to avoid a collision.
*588 The driver and a passenger in an automobile which was following Hill estimated the speed of the truck at between 50 and 55 miles per hour. Their testimony is to the effect that when the northbound vehicle rounded the curve ahead of the Hill vehicle, Hill applied his brakes and drove onto the east shoulder of the highway, but that after driving a short distance on the shoulder he suddenly accelerated his car, passed the truck and turned sharply to his right to get back on the highway ahead of the truck. The Hill car began skidding sideways as it was turned to its right and as it moved in front of the truck, and it was skidding in that way when the collision occurred. One of the above disinterested witnesses said that the Hill car "turned on its side up on two wheels and it veered sharply across the road back into the southbound lane" in front of the truck. Both of these witnesses stated that Banks reduced his speed while Hill was passing the truck.
The trial judge found that the truck was traveling at a speed of about 50 miles per hour when it reached the crest of the hill, and that its speed increased as it went downhill. He found, however, that "Hill did not initiate his passing maneuver until he was near the first or north curve" of the "S" curve, and that "the northbound vehicle was in view before Banks knew Hill was attempting to pass." The trial judge concluded that the collision occurred solely from the negligence of Hill in attempting to pass at a time when he could see the curve in front of him, when he could see the no passing zone and when he should have known that he could not complete the pass and return to the proper traffic lane before he entered the no passing zone. He also held that when Banks became aware of Hill's effort to pass the truck, he "had no opportunity to do anything other than what he did," and that "there was no negligence on the part of Mr. Banks that contributed to this accident."
We think the evidence supports the factual findings of the trial judge. Although Banks may have exceeded the 50 mile per hour speed limit after he passed the crest of the hill, it is apparent that he exceeded it only slightly and that he promptly reduced his speed when Hill attempted to pass the truck. The speed of the truck obviously did not prevent the automobile from passing, because the evidence shows that Hill in fact did succeed in passing it, with a sudden burst of speed, even after he had applied his brakes, driven on the shoulder and momentarily discontinued his passing maneuver.
We agree with the trial judge that neither the speed of the truck nor any other act of Banks constituted a proximate or contributing cause of the accident, and that Banks thus was free from negligence.
Plaintiffs contend next that defendant Ribaul was negligent in continuing to allow Banks to drive the truck despite "repeated traffic violations on his record, involving speed and misoperation of a truck." The evidence shows that Banks had been charged with or convicted of several traffic violations before this accident occurred. We have found, however, that Banks was free from negligence in this instance. His past record of traffic violations thus had nothing to do with the accident involved in this suit. If negligence can be attributed to Ribaul for allowing Banks to drive the truck, that negligence was not a proximate or contributing cause of this accident. We agree with the trial judge that Ribaul was free from negligence.
Plaintiffs also contend that the Department of Highways was negligent in marking the highway improperly and in failing to maintain it in a safe condition. Some trees were located along the east side of the highway, between the two ends of the "S" curve, and they were close enough to the highway that they obstructed the vision of a southbound motorist while he was in the northbound lane of traffic and a substantial *589 distance from the "S" curve. They contend that the Department of Highways was negligent in failing to trim those trees so that the view of the southbound passing motorist would not be obstructed under the above circumstances, or to mark the highways in such a manner that motorists would be warned of the danger.
Col. Donald Thibodeaux, now superintendent of the Louisiana State Police, investigated the scene of the accident after it had occurred. He testified that he conducted five tests in which he attempted to pass a large truck with a semi-trailer at the place where this accident occurred. The truck was traveling 50 miles per hour and he was in an automobile traveling at a speed of from 55 to 60 miles per hour. He stated that when he first started his passing maneuver while traveling south, he noticed that the tree branches on the east shoulder of the highway at the "S" curve obstructed his vision of the southernmost part of that curve. He explained that these branches did not obstruct his vision before he moved into the passing lane, that the reason they constituted an obstruction after he entered the passing lane was because the north part of the "S" curve turned to his left, and that before attempting to pass he could see all the way to the south end of the "S" curve. He testified that in each instance while attempting to pass the truck at a "slow" or a "gradual" speed, he determined that it would be hazardous for him to continue the passing maneuver because of his inability to see oncoming motorists as they rounded the southernmost curve, and for that reason he dropped back behind the truck instead of attempting to go around it.
Trooper Thibodeaux stated that the tree branches did not hang over the roadway, that they "weren't even on the shoulder part," that they were "confined in a fenced area," and that "the obstruction was caused really by the curvature of the road; the road curved behind them."
Lacy Glasscock, an expert traffic engineer, testified that the two passing zones on the highway at that point were marked in accordance with the standard requirements contained in the State Manual of Traffic Control Devices. The manual which was in effect at that time was "patterned almost exactly after" the requirements set up by the American Association of Highway Officials. He stated that according to that manual vehicles traveling at 60 miles per hour should have an available sight distance for passing of at least 1000 feet. He found that the passing area in this instance was 1318 feet. Glasscock stated that he "saw nothing during my inspection to indicate to me an unusual hazard at this location." In his opinion the design of the highway at that point was such that a southbound motorist could "very easily" complete a passing maneuver "within the available passing distance permitted for passing." His opinions were based on the correct assumption that there was a 60 mile per hour speed limit at that point.
The driver of the vehicle which was following Hill testified that when Hill began his passing maneuver "the lane was clear at the time he pulled out," and that "then, out of this curve a car appeared suddenly." Miss Wilkinson testified that when Hill first crossed into the passing lane she "was able to see all the way to the end of the curve," and that she "saw there was no oncoming traffic." She also testified that while Hill was engaged in the passing maneuver she saw the northbound car "just coming out of the curve" or when "it had just come out of the curve."
The trial judge found that the obstruction to the view of southbound travelers caused by trees near the northern part of the "S" curve "did not cause or contribute to the accident as Mr. Hill was south of the point where his view was obstructed before he began his passing maneuver." He concluded that the Department of Highways "was not responsible for the accident in any manner."
*590 The law is settled that the Department of Highways is not responsible for every accident which may occur on state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The Department, however, is liable for damages caused by defects in a highway which are sufficiently dangerous to cause an accident and an injury to a person using the highway in a reasonably prudent manner, if the Department has actual or constructive notice of the defect. Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La. App. 3 Cir. 1963).
We agree with the trial judge that the trees located east of the highway in the area of the "S" curve did not cause or contribute to the accident. The evidence indicates that they did not obstruct Hill's vision as he was attempting to pass the truck. Since Miss Wilkinson and the driver of the following car were able to see the northbound vehicle round the southernmost part of the "S" curve, we find that Hill also must have seen it. See De-Gregory v. State, Department of Highways, 192 So.2d 834 (La.App. 1 Cir. 1966); Dabov v. Allstate Insurance Company, 302 So.2d 697 (La.App. 3 Cir. 1974).
Our conclusion, like that of the trial judge, is that the Department of Highways was not negligent and is not liable for the damages sustained by plaintiffs.
Plaintiffs contend, finally, that the award of damages made by the trial court should be increased.
Miss Wilkinson sustained serious, permanent and painful injuries as a result of this accident. Immediately after the accident occurred her injuries were diagnosed as shock and low blood pressure, multiple lacerations about the face, forehead and elbow, broken left and right thighs, severe lacerations of lower right leg which was mangled out of shape, multiple open foot fractures with a loss of circulation, fracture of the left ankle.
Initially her right leg was amputated below the knee, and later it was amputated above six inches above the knee, leaving the patient with a nine inch stump. Multiple pins were placed in the left leg, which required surgery and prolonged traction. The left ankle later developed a contusion of the artery necessitating additional surgery.
At the time of trial Miss Wilkinson was walking with the aid of a prosthesis fitted over her right stump, and a brace fitted on her left leg. Surgery has left scars on and a limitation of motion in her left leg, which materially handicaps her in view of the fact that her right leg has been amputated. She will always have to wear a brace and a special hightop shoe to stabilize her ankle. She has developed arthritis in the lower left leg, and in time she will require new prostheses, special shoes and braces.
The evidence establishes special damages in the amount of $24,285.31. The trial judge awarded both of the plaintiffs the aggregate sum of $124,285.31. The trial court is vested with much discretion in determining the amounts which should be awarded as general damages. Cooksey v. Central Louisiana Electric Company, Inc., 279 So.2d 242 (La.App. 3 Cir. 1973). Although this was a tragic accident and Miss Wilkinson sustained extremely serious injuries, we have decided that the award made to her is within the range of the discretion which is vested in the trial court, and we thus will not disturb that award.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.