350 So.2d 288 (1977)
Leanna Mathews BARNES et al., Plaintiffs and Appellants and Appellees, and
Mary Ann Dunbar Wilkerson et al.
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants and Appellees and Appellants.
No. 6101.
Court of Appeal of Louisiana, Third Circuit.
September 20, 1977.
Rehearings Denied October 11, 1977.
Writs Refused November 23, 1977.
*289 William J. Doran, Jr., Baton Rouge, for defendants and appellees and appellants.
Neblett & Fuhrer by Robert B. Neblett, Jr., Daniel E. Broussard, Jr., Alexandria, for plaintiffs and appellants and appellees, Obie Mae Jefferson and Dorothy Mae Wilkerson.
Sandoz, Sandoz & Schiff by Leslie J. Schiff, Opelousas, for plaintiffs and appellants and appellees, Leanee Mathews Barnes et al.
James A. Bolen, Jr., Alexandria, for defendants and appellees and appellants, Prassel Enterprises.
Reeves, Lossen & Owens by R. R. Reeves, Jr., and Jack F. Owens, Jr., Harrisonburg, for plaintiffs and appellants and appellees.
Before CULPEPPER, GUIDRY and FORET, JJ.
CULPEPPER, Judge.
This is a companion case to Jefferson et al. v. Liberty Mutual Company et al., La. App., 350 So.2d 294, in which a separate opinion is being rendered today.
These cases involve wrongful death actions brought by the survivors of four men killed when the pickup in which they were riding collided with a tractor-trailer unit on the Old River Bridge on U.S. 84 in LaSalle Parish.
Plaintiffs in the present case are the widows and surviving children of Willie Y. Barnes and George A. Wilkerson. Plaintiffs in the companion case are the widows and surviving children of Jett Riley Jefferson and George Wilkerson.
Named as defendants are: Anderson Allen, Jr., the driver of the tractor-trailer; Prassel Enterprises, Inc., Allen's employer and owner of the tractor-trailer; Liberty Mutual Insurance Company, the insurer of Prassel and Allen; and the State of Louisiana, through its Department of Highways. Liberty Mutual and its insured filed a third party demand against the Department of Highways for indemnity and/or contribution. The Department of Highways also brought a third party demand against Mutual and its insured.
The trial court rendered judgment in favor of the plaintiffs against only the Department of Highways. The other defendants were exonerated from liability. Plaintiffs and the Highway Department filed *290 motions for a new trial. After learning that technical difficulties prevented portions of the testimony in the original trial from being transcribed, the trial judge granted a new trial. The new trial was limited to the taking of testimony of the witnesses whose earlier testimony could not be transcribed. At the retrial, the trial judge reaffirmed his earlier judgment. Plaintiffs and the Highway Department appealed.
Plaintiffs ask that the trial court judgment be affirmed with regard to the Highway Department but reversed with regard to Prassel Industries, Inc., Anderson Allen, Jr. and Liberty Mutual, whom they feel should be cast with the State of Louisiana for damages. Plaintiffs also ask for an increase in damages awarded.
The Highway Department in its appeal asks for a reversal of the trial court judgment which dismissed the claims against Anderson Allen, Jr., Prassel Enterprises, Inc., and Liberty Mutual and found only the Highway Department liable. The Highway Department also argues the trial court erred in the amount of damages awarded and asks that this amount be reduced.

ISSUES
The substantial issues on appeal are: (1) Was the Department of Highways negligent as to the inspection and maintenance of the surface of the Old River Bridge? (2) Was Anderson Allen, Jr., the truckdriver, guilty of negligence which was a legal cause of the accident? (3) Are the awards excessive or inadequate?

GENERAL FACTS
The decedents were killed when the pickup in which they were riding, and which was owned and operated by George Wilkerson, collided with the tractor-trailer owned by Prassel and driven by Allen. The collision occurred shortly after 4:00 p. m. on August 17, 1973 as the vehicles were crossing the Old River Bridge on U. S. Highway 84, approximately 6½ miles east of Jena, Louisiana. It had rained intermittently that afternoon and the roadway was wet. The bridge is on a straight section of the highway and visibility is not impaired.
U. S. Highway 84 is a two-lane highway going east and west. At the time of the accident, the Wilkerson vehicle was proceeding east across the 1,000 foot long bridge, and the Prassel truck was going west. The collision occurred in the east bound lane, the proper lane of travel for the pickup. On impact, the pickup was knocked backwards approximately 125 feet, and the tractor-trailer continued to the west for a distance of about 220 feet. The tractor spun around and came to rest on the south bridge railing heading east. The trailer, which had broken loose from the tractor, headed into the north bridge railing and stopped.
There is no issue of contributory negligence on the part of George Wilkerson.
It was established that the tractor-trailer driven by Allen hit the right bridge railing after traveling only 65 feet on this 1,000-foot long bridge. The truck continued out of control sliding from one side of the roadway to the other as it progressed across the bridge. It finally crashed into the Wilkerson pickup 715 feet further, near the west end of the bridge.
Testimony pertaining to the characteristics of the bridge's surface when wet was presented by several expert witnesses, the eyewitnesses to the accident and others who had traveled over the bridge when it was wet. The trial court concluded:
". . . the bridge involved was extraordinarily hazardous when wet and that more probably than not there was no chance that Anderson Allen could have taken successful evasive action."
Testimony revealed that the road surface had been resealed in November of 1972. At that time cationic asphalt was put down and then covered by light weight aggregate. A manual published by the State Department of Highways, prescribing certain criteria for various work projects, required that such materials not be applied during November, December, January or February unless approved in writing by the *291 chief engineer. This was due to problems which can develop if the materials are used when the air temperature is less than 60 degrees. If such approval is given, a follow-up inspection would be required several months later. The record reflects no such approval or inspection. Some of the testimony indicated that a slippery condition is one of the possible results of application under improper conditions. While there was no express finding by the trial judge that this was the reason for the slippery condition of the bridge, the judge did find that the bridge was extraordinarily slippery at the time of this accident. To reach this conclusion the trial court evaluated the testimony of numerous witnesses, including the contradictory testimony of two experts, Professor Barnwell, a witness for Liberty Mutual, and Dr. Tonn, a witness for the Highway Department. The judge was convinced by Professor Barnwell, whom he felt did more direct and extensive investigation of the accident than Dr. Tonn, and whose explanation was more in accord with the testimony of the only uninvolved eyewitness, a lady who was following the truck, and most of the other witnesses. The court also held that this dangerous defect was in fact the sole legal cause of the accident.
The Court went on to find that the Highway Department had actual notice of the defective road surface and yet failed to either repair the defect, or at the minimum, place a sign at the entrance of the bridge warning of the potentially dangerous condition. This knowledge came by way of complaints made by a state trooper to employees of the Highway Department and by actual notice to Department employees of an accident occurring on the bridge under similar conditions the day before the accident at issue here.
The court went on to say:
". . . the Court concludes the Highway Department had real and timely notice of potential trouble that should have resulted in repair work of the nature of that done in mid-September of 1973. The Court is also of the opinion that the real fault and cause of the subject accident was the failure of responsible Department employees to create and put into effect a program that would have equipped the Parish Supervisor and the District Supervisor to do the inspections needed in such a way that hazards of this nature could be detected in advance of catastrophic accidents."
The court had earlier concluded that the Highway Department personnel directly charged with the responsibility of inspecting and maintaining the road surface on the Old River Bridge were incapable of any meaningful inspection that would detect a hazardous condition before accidents occurred. They were without equipment and without a specification of a minimum standard of quality.
The law is settled that the Highway Department is not responsible for every accident which may occur on the state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from obstructions or defects in such highways. Standard Brands, Inc. v. Department of Highways, State of Louisiana, et al., 339 So.2d 780 (La.1976); Wilkinson v. American Insurance Company, 311 So.2d 584 (La.App. 3rd Cir. 1975); Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3rd Cir. 1975), writs refused; Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3rd Cir. 1974), writ refused 303 So.2d 182 (La.1974).
As the Supreme Court stated in Standard Brands, Inc., supra:
"In order to hold the Department of Highways liable for an accident caused by an unsafe or hazardous condition it must be shown that the Highway Department had prior notice, either actual or constructive, of the dangerous condition and had sufficient opportunity to remedy same or at least to alert and warn motorists of its presence and failed to do so. Coleman v. Houp, 319 So.2d 831 (La.App. 3rd Cir. 1975)."
The test for deciding whether there was an unsafe or hazardous condition is *292 whether or not the highway was maintained in a reasonably safe condition for persons exercising ordinary care and prudence. Jones v. Louisiana Department of Highways, 338 So.2d 338 (La.App. 3rd Cir. 1976); Dickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975); Wilkinson v. American Insurance Company of Newark, N. J., 311 So.2d 584 (La.App. 3rd Cir. 1975).
Applying these rules, the trial court in its reasons for judgment after the partial retrial concluded:
"Turning to the contention by the Department of Highways that it should not be held responsible for the catastrophy, the views expressed in the original opinion have not been altered. Their able and dedicated counsel has urged the recent testimony establishes the condition was unpredictable and fleeting and that the Department could not have found it if they had looked for it. The fact is they did not look. Even after ordinary motorists began to notice the bridge was slippery, after notice and even after the accident in this case and the other major accident shortly thereafter, the Department did not carefully examine this bridge to see why these terrible events were occurring."
Though there is conflicting testimony about the condition of the surface of the bridge at the time of the accident, the above findings of the trial court are supported by a reasonable evidentiary basis and should not be disturbed on appeal, Canter v. Koehring Company, 283 So.2d 716 (La.1973).

NEGLIGENCE OF ANDERSON ALLEN, JR.
From evidence produced, the trial judge found as facts: (1) Anderson Allen, the driver of the tractor-trailer was traveling at between 50 and 55 miles per hour as he approached and drove on to the bridge. (2) The speed limit for such trucks at the time of the accident was 50 miles per hour. (3) The road surface was wet, but it was not raining at the time. (4) The truck was being operated in a normal fashion until it entered upon the bridge and began to skid back and forth from lane to lane.
Visibility was normal and there was no forewarning of a slippery condition on the bridge.
The Prassel tractor-trailer collided with the Wilkerson vehicle in the east bound lane. This meant that Anderson Allen, Jr. was in the wrong lane of traffic when he crashed into the pickup.
Plaintiffs and the Highway Department rely heavily on the presumption of negligence by a motorist shown to be in the wrong lane of traffic when an accident occurs. Simon v. Ford Motor Company, 282 So.2d 126 (La.1973); Jones v. Continental Casualty Company of Chicago, Illinois, 246 La. 921, 169 So.2d 50 (1964); Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957). They also emphasize the rule that a motorist must consider prevailing weather conditions and reduce his speed if needed to maintain control under the prevailing weather and highway surface conditions. La.R.S. 32:64; Rizley v. Cutrer, supra.
As stated above, the trial judge found that Allen had control of the truck until he started to skid, and that he was operating in a normal manner and at a speed commensurate with the prevailing weather conditions on what appeared to be a normal road surface. The only serious issue is whether Allen's speed either caused him to start skidding or prevented him from stopping in time to avoid the collision.
The trial court concluded that Allen's speed was not a cause of this accident. It predicated this conclusion on a number of facts. We quote from the judge's original reasons for judgment:
(1) The long skid involved began within 65 feet of Allen's entry onto the bridge;
(2) The length of the skid before and after impact;
(3) Other accidents of a similar nature shortly before and after the accident in question, particularly (a) the one involving a similar large tractor-trailer *293 rig in which the driver regained control only after he got off the bridge; and (b) the one in which a pickup skidded the length of the bridge and rear ended a turning motorist at the end;
(4) Experiences related by other drivers in which they claimed difficulty in controlling smaller vehicles;
(5) The testimony that at extremely low coefficient friction levels vehicles might skid long distances with little loss of speed or force;
(6) The testimony of Professor Barnwell that under certain conditions the bridge surface under consideration could take on extraordinary low friction characteristics;
(7) It was not raining when the accident occurred but had been earlier;
(8) The testimony of Professor Barnwell and some of the drivers that vehicles could not be controlled on this bridge at speeds in the 45 to 65 mph range;
(9) Allen's speed was not more than 55 mph.
Also the trial judge stated in his written reasons:
"For the reasons set forth above, this Court is of the opinion that if Anderson Allen, Jr. was negligent in operating his vehicle at 50 to 55 mph in the daytime in August after a rain, it was not the cause of the accident that occurred. Had he applied his brakes it is more likely than not it would have availed him nothing as it did the other drivers in the accidents of August 16 and September 5, 1973. There is evidence in the record that no brake application is a reasonable response when ice slick conditions are encountered."
Although there is conflict in the testimony, there was ample evidence before the trial judge which, upon his reasonable evaluation of credibility, furnishes a reasonable basis for his finding of fact. In this situation, the appellate court should not disturb the findings of the trial court, even though it may feel a contrary finding is just as reasonable. Canter v. Koehring Company, supra. Under this rule of appellate review, we must affirm the finding that Allen was free of any negligence which was a legal cause of the accident.

QUANTUM
The trial judge awarded to the widows of the decedents general damages varying from $55,000 to $63,000, depending on the ages and incomes of the decedents. He awarded the minor children sums varying from $17,000 to $29,000, depending on the ages of the children and the incomes of the decedents. He awarded the major children $12,500 each. Defendants contend the awards are excessive. Plaintiffs appellants contend they are inadequate.
The plaintiff, Joe L. Barnes, particularly asks for an increase in his award. The trial court awarded him $12,500, although he was a minor, 17 years 9 months of age at the time of the accident. We believe this was a minor oversight on the part of the trial court. The court stated that Joe L. Barnes was a major at the time of his father's death when in fact he was still a minor. We therefore amend that part of the judgment awarding Joe Barnes the amount of $12,500 and increase the award to $17,000, which is in accord with the awards made to the other minor children. Earnest Barnes, the oldest of other Barnes minors, was 16 years old and he was awarded $21,000.
We have reviewed the remaining awards under recent guidelines for appellate review as set down in Coco v. Winston Industries, Inc., et al., 341 So.2d 332 (La. 1977). The record reveals no abuse of discretion by the trial court. We leave unchanged the awards to the other plaintiffs.
For the reasons stated above, we amend the judgment of the district court to increase the award to Joe L. Barnes from $12,500 to $17,000. Otherwise the judgment is affirmed. Costs of this appeal are assessed against the State of Louisiana through the Department of Highways, insofar as such costs may be assessed against a state agency.
AFFIRMED, AS AMENDED.