STOKER, Judge.
This is a suit for damages against the State of Louisiana, through the Department of Transportation and Development, arising out of a one-car accident. The plaintiffs base their action on negligence and strict liability. They claim that the asphalt surface of a highway was defective because it was slippery when wet. Plaintiffs, husband and wife, allege this condition caused the vehicle driven by Clovis O. Howell, the wife, to skid off of the highway and strike a pile of broken concrete in a ditch on the side of the road. Additionally, they claim the placement of the concrete constituted a hazard to motorists who might run off the highway at that location. The trial court found for the plaintiffs and awarded $69,593.75, of which $65,000 represented general damages awarded to Clovis Howell.
*632 The State appealed. The plaintiffs answered the appeal asking that the general damage award be increased.
The accident occurred on Louisiana Highway 8 near its intersection with Louisiana Highway 1 in Rapides Parish, Louisiana. On the morning of July 6, 1976, Clovis Howell was driving the Howells’ 1973 Buick Electra 225, taking her daughter to a piano lesson. The principal testimonial evidence was given by Clovis Howell and two expert witnesses. On the basis of the evidence the trial court found a hazardous condition (defect) existed in the surface of the highway because insufficient aggregate was mixed in the asphalt which made the road surface unreasonably slick and slippery when wet. The highway at the time of the accident was wet, as it was raining. The road in question, Louisiana Highway 8, is a blacktop, two-lane road running through rolling, curving, and hilly pine woods. Clovis Howell testified that she was traveling at about 45 to 50 miles per hour as she approached the crest of a hill. The downgrade of the hill ended at a curve at the bottom of the hill. At or near the crest of the hill she touched her brakes to slow down to about 35 to 40 miles per hour in anticipation of meeting the curve at the end of the downgrade. At this point she lost control and skidded off of the highway. Upon the striking the pile of broken concrete placed in the ditch by the State, the Howell car turned upside down.
The trial court found that the slippery road surface was the cause of the accident and the State had notice of the condition. In its reasons for judgment the trial court grounded its decision solely on negligence and made no reference to strict liability or liability without fault. The trial court did not rule or comment on any role the pile of concrete may have had on liability. By implication the trial court found no contributory negligence on the part of Mrs. Howell.
With reference to the liability issue, we set forth the trial court’s ruling contained in its reasons for judgment which pertains to liability as follows:
“This is a tort case in which one of the plaintiffs, Mrs. Clovis 0. Howell, suffered injuries when her car skidded out of control on Louisiana Highway #8. Mrs. Howell and her husband brought this suit claiming defendant, the Louisiana Department of Transportation (Department), failed to properly maintain the highway. The Howells base their claim on both negligence and strict liability. For the following reasons, this Court holds that the Department was negligent.
“From the evidence presented at trial, this Court finds the following facts. On the day of the accident, Mrs. Howell was driving east on Highway # 8 in a light rain. Because she knew the road tended to be slippery when it was raining, she was going only forty (40) miles per hour. As she entered a downhill curve, she felt the need to slow down so she touched her brakes lightly. She immediately went into a skid. Mrs. Howell was not able to regain control of her car. The car skidded off the road and turned over in the ditch. Mrs. Howell’s brakes and tires were not defective.
“The applicable law is well-settled. The highway department is not responsible for every accident which occurs on the state highways, nor is it a guarantor of the safety of travelers, or an insurer against all injury which may result from obstructions or defects on the highways. However, it is the highway department’s duty to construct and maintain the highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. In order to hold the Department liable for an accident caused by an unsafe or hazardous condition, it must be shown that the Department had prior notice, either actual or constructive, of the dangerous condition and had sufficient opportunity to remedy it or at least to warn motorists of its presence and failed to do so. E.g., USF&G Co. v. State, Dept. of Highways, 339 So.2d 780 (La., 1976); Barnes v. Liberty Mutual Ins. Co., 350 So.2d 288 (La.App., 3rd Cir., 1977). In the present case, it is clear to *633 this Court that a hazardous condition existed. Plaintiffs’ expert, Mr. Evans, testified that asphalt is ordinarily mixed with aggregate when used as a road surface. The reason aggregate is mixed in is that asphalt by itself creates a very slippery surface. Mr. Evans went on to testify that Highway #8 was covered with asphalt alone; there was no aggregate. The result was a very slippery road surface which caused not only Mrs. Howell’s accident, but several other accidents as well. In addition, Mr. Evans’ testimony was bolstered by the testimony of several people who either, had had or had witnessed other accidents similar to Mrs. Howell’s. Therefore, this Court finds that Highway # 8 was too slippery due to there being no aggregate mixed with the asphalt, and that that was the sole cause of the accident.
“Additionally, this Court finds that the Department had ample notice of the hazardous condition. As has already been mentioned, there had been several similar accidents along the same portion of Highway # 8. Some of those other accidents occurred before Mrs. Howell’s accident, and some after. At least some of those other accidents were in the Department’s files, and at least one of those in the Department’s files had occurred a full two years before Mrs. Howell’s accident. In addition, the Department’s personnel regularly visited the portion of Highway # 8 in question. Thus, the Department had both notice of the condition and sufficient opportunity to remedy it or to warn of its existence. The Department did neither. Therefore, this Court holds that the Department was negligent.”
The State has rigorously defended this case insofar as liability is concerned. It pleaded contributory negligence on the part of Clovis Howell in numerous respects, mainly emphasizing traveling at an alleged excessive rate of speed. (At the time the plaintiffs’ suit was filed Louisiana had not adopted its comparative negligence statute, and contributory negligence on the part of Mrs. Howell would have barred recovery by plaintiffs.) The State contends that negligence on the part of Mrs. Howell was the sole cause of the accident.
ISSUES
The specifications of error urged by the State are set forth in an appendix to this opinion. In essence the State contends that the highway contained no defect and the accident occurred for the sole reason that Mrs. Howell lost control of her vehicle as she attempted to make the left turn of the highway at the bottom of the downgrade. As a consequence, she ran off the roadway into the ditch. As the trial judge’s findings are completely to the contrary and constitute issues of fact, the State must establish that the trial court committed manifest error in order to prevail. Canter v. Koehring Company, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
THE HIGHWAY DEFECT
Color photographs in evidence (P-1 through P-10) combined with testimony given at trial present a reasonably graphic picture of the nature of the downhill slope on which Mrs. Howell lost control and also the nature of the approach to the hilltop. Mrs. Howell was driving from the Sharp community toward Louisiana Highway 1. The roadway had been resurfaced or over-layed up to about the crest of the hill but had not been so improved on the downgrade. This overlaying was occasioned by the fact that the highway from the hill crest for some distance toward Sharp had actually been relocated because a new electrical plant was built in the area. The overlayed portion is depicted in P-2 and P-4. Photograph P-1 in particular shows the downgrade without any overlay where Mrs. Howell’s Buick began to slide. This photograph taken on a dry day exhibits a linear pattern of bright shiny areas in both lanes of the highway running down the highway in the linear area normally traversed by the tires of vehicles that travel on the road. The bright areas give the *634 appearance of irregular rivulets flowing down the highway in a more or less continuous fashion. The areas surrounding the bright shiny material present an appearance of an entirely different texture which does not reflect light.
The evidence, particularly the testimony of Mr. Evans, plaintiff’s expert, establishes that the bright shiny portion of the road surface consisted of pure tar and contained no aggregate such as gravel. This tar was superimposed on the duller portions of the surface which did contain aggregate which would account for its dull nonreflective appearance in the photographs.
On the basis of the description given above, we conclude that, with Mrs. Howell’s testimony as to the reaction of her car, the trial court did not commit manifest error in finding that the road surface, when wet, constituted a defect. Moreover, the defect constituted an unreasonable hazard, a dangerous defect, which presented an unreasonable risk to motorists exercising ordinary care and prudence.
The State strongly suggests that the idea that the mere road surface condition may constitute a defect is fanciful. Without suggesting there is any exact similarity of conditions or circumstances, we have discussed at some length how the slippery condition of a road may constitute a defect in Barnes v. Liberty Mutual Insurance Company, 350 So.2d 288 (La.App. 3d Cir. 1977), writ denied 352 So.2d 238, 289 (La. 1977). See also Bialy v. State, Etc., 414 So.2d 1273 (La.App. 3d Cir.1982), writ denied, 417 So.2d 367 (La.1977).
In addition to vigorously contending that the downhill slope of the highway contained no defect, the State contends Mrs. Howell’s explanation of how her vehicle reacted to the tapping of her brakes is not at all credible, and the trial court erred manifestly in accepting her version of the episode. Counsel for the State extensively cross-examined Mrs. Howell and plaintiffs’ expert, Mr. Evans, to demonstrate that running off of the road on the right side of the road was the result of excessive speed which prevented Mrs. Howell from being able to make the left hand turn. Suffice it to say that, considering all of the State’s contentions, we are convinced that the accident could have happened as Mrs. Howell testified it did happen and as Mr. Evans testified it could have happened.
The State relies heavily on the testimony of Trooper Darrell W. Guillory, the State policeman who investigated the accident. However, we do not find that Trooper Guillory’s testimony is inconsistent with Mrs. Howell’s version of the accident. The State presented Trooper Guillory as an expert in accident reconstruction and he was accepted by the trial court as such. Trooper Guillory arrived at the scene of the accident while the roadway was still wet but after the rain had stopped. He found no skidmarks on the blacktopped surface of the road. This is understandable inasmuch as it was raining when Mrs. Howell’s Buick went into a skid so that no residue of tire rubber would be laid down. He did find track marks off the highway which showed imprints in the grass leading to the place where the vehicle came to rest. Trooper Guillory interpreted these imprints to indicate that the Buick's front wheels were not turned as it left the highway in the curve and that the wheels were rolling and were not locked. This testimony by Trooper Guillory is entirely consistent with Mrs. Howell’s description of the situation as she left the road.
Mrs. Howell testified before Trooper Guillory and on cross-examination. In cross-examination she stated she applied her brakes one time only and that was at the point when she topped the hill crest. The car did not swerve but slid straight ahead. In continuing straight ahead the vehicle left the highway. Although Mrs. Howell could not remember whether she tried to steer to the left to meet the curve and avoid going off the highway (she assumed she did), her recollection was that she had no control and continued to slide straight ahead off the highway. When she realized the Buick was going to leave the highway, Mrs. Howell took what she called *635 a “death-grip” on the steering wheel and went straight off the highway. She was not applying her brakes at the time the Buick went off the highway. This testimony is consistent with the findings and opinion of Trooper Guillory.
Trooper Guillory testified that while the road surface was still wet, although the rain had stopped, he performed a road test. He drove his vehicle in the same direction as Mrs. Howell at 40 to 45 miles per hour. He stated he had no difficulty in keeping his vehicle in his lane of travel and was able to negotiate the curve. Significantly, Trooper Guillory did not apply his brakes at any time. On cross-examination, he gave the following testimony:
“BY MR. VIZZIER:
Q Officer, you said when you drove back over that stretch of road after checking the mile marker, you mention that you didn’t put on your brakes at any point.
A No, I didn’t.
Q Is that correct?
A That’s correct.
Q When you were coming down that hill — I think you’ve looked at the exhibits before where they [sic] coming down the hill approaching the curve— you didn’t put your brakes on at any point in that curve ...
A No, I didn’t.
Q ... and coming down that hill?
A No, I did not.
Q All right. So you don’t have any idea whether you might have skidded or not if you’d put your brakes on, do you?
A No, but I wasn’t — I wasn’t going to chance that by tapping my brakes, you know.”
This testimony by Trooper Guillory certainly does not lessen the credibility of Mrs. Howell’s testimony. In fact, it tends to lend credibility to her version of the events.
The State urges strongly that Trooper Guillory gave expert testimony to the effect that the accident occurred because Mrs. Howell was traveling at an excessive rate of speed. If the Trooper’s testimony is read carefully, it is clear that he did not testify that Mrs. Howell was traveling at an excessive rate of speed. What he did say was that at an assumed speed of 40 miles per hour being maintained by Mrs. Howell (which is what he put in his accident report), it was “for some reason, excessive — or what I felt in this case, was excessive speed for the roadway conditions and weather, that prompted the vehicle to leave the highway and wind up in the ditch.” As we read all of the Trooper’s testimony, he simply reasoned backwards to say that given the combination of the road condition and the fact that it was wet the coefficient of friction was such that the Buick’s tires could not get enough traction to cause a slowing down but rather caused them to slide. He made no test to determine what the coefficient of friction was.
The State makes much of the following testimony given by Trooper Guillory:
“Q And Trooper, in this investigation, you not only walked the area of the road but you road [sic] it in your automobile to try to determine a cause for — in your mind — for Mrs. Howell not being able to maintain the travel portion of the roadway, is that correct?
A That’s correct.
Q Did you note in your report any contributing factors which you felt contri-. buted — uh—to the fact that she was unable to maintain the roadway?
A On a section in the report, I marked several factors that I thought were key factors in the accident.
Q What were those?
A Violations, vision obscurements, road surface, roadway condition, and weather at the time.”
Actually, Trooper Guillory did not know what caused the accident. (Tr. 140) He arrived at the accident scene at noon on the day of the accident. No one could tell him what happened. It is clear that in listing the factors mentioned above, Trooper Guil-lory was merely checking off certain blocks in his report to indicate possible explanations, in view of the fact that he found no *636 physical evidence to explain or provide a clue as the cause of the accident.
Perhaps we overburden this opinion with the detailed recitation of some of the facts given above. We do so to show the evidence considered by the trial judge and to demonstrate that the evidence is not convincing that the trial court’s conclusions are clearly wrong under the standards discussed in Arceneaux v. Domingue, supra, referred to above such as to dictate a holding by us that the trial court committed manifest error.
NOTICE TO THE STATE OF THE DEFECTIVE HIGHWAY SURFACE
As noted above, the trial court grounded its decision on negligence alone and found that the State had notice of the defective condition of the highway surface. We find it unnecessary to discuss the issue of notice for the two reasons. To begin with the State has not made an issue of the question of notice. In any event, however, we need not be concerned with notice because plaintiffs’ suit, being also grounded on strict liability, or liability without fault, under LSA-C.C. art. 2317, liability may be based on this principle without the necessity of showing notice or knowledge of a defect. Jones v. City of Baton Rouge, ETC., 388 So.2d 737 (La.1980). We recently discussed this principle in Holmes v. State of Louisiana, Through Department of Highways, ETC., 466 So.2d 811 (La.App. 3d Cir.1985).
ALLEGED CONTRIBUTORY NEGLIGENCE OF CLOVIS 0. HOWELL
The State alternatively defends on the liability issue by contending that Clovis 0. Howell was guilty of contributory negligence. As we find no contributory negligence on the part of Mrs. Howell, we do not reach the question of whether the comparative negligence concept should apply. We also note that in strict liability under LSA-C.C. art. 2317 contributory negligence has been equated to “victim fault” as referred to in Loescher v. Parr, 324 So.2d 441 (La.1975), the principle case interpreting the article. See Quinn v. State of Louisiana, Through the Department of Highways, 464 So.2d 357 (La.App. 3d Cir. 1985).
The trial court fixed the speed of Mrs. Howell at 40 miles per hour, presumably at the time she tapped her brakes. The photographs in evidence show that a curve sign was located just over the crest of the hill on the downhill side of the hill located on the right shoulder. Located below the curve sign on the same metal standard to which the curve sign is affixed, there was a smaller sign which read “35 M.P.H.” We take it that 35 miles per hour posted speed limit was established to warn motorists to slow to that speed because of the curve at the end of the downhill slope. As such it did not warn motorists that the downhill slope was slippery when wet. Signs intended to warn persons that a road surface is slippery when wet say that explicitly.
Mrs. Howell’s speed of 40 miles an hour would indicate she was not contributo-rily negligent for two reasons. First, she had not reached the curve and had tapped her brakes for the purpose of slowing down. In the second place, if • she was exceeding the speed limit at that point a proper analysis would require taking into account the purpose of the speed limit. Accordingly, the risk which the 35 mile per hour limit was designed to warn against (traveling at a speed which would pose a danger in attempting to turn left at the curve) was not the risk Mrs. Howell encountered (dangerously slippery road surface).
Finally, the State urges that because Mrs. Howell had lived within a few miles of the accident site for a number of years, and she should have known that the highway was always slick when wet. As noted by trial court, the evidence showed that a number of other motorists had experienced similar difficulties and accidents. Evidently the danger was not as obvious *637 and apparent as the State urges it was. In fact, as found by the trial court, Mrs. Howell knew that the road tended to be slippery when it was raining and for that reason was only traveling at 40 miles per hour and was attempting to slow down further when she tapped her brakes.
The State bore the burden of establishing its defense of contributory negligence. We cannot say that the trial court committed manifest error in failing to find that Mrs. Howell was guilty of contributory negligence.
ALLEGED LIABILITY IN MAINTAINING THE PILE OF BROKEN CONCRETE
The trial court did not refer to the plaintiffs’ contention that the State’s liability could be premised on the action of piling the broken concrete in the ditch. The pile of concrete evidently constituted a hazard in the event that a vehicle might leave the highway and strike the pile. It would increase the possibility for physical damage and personal injury. It played no part in causing Mrs. Howell’s vehicle to leave the highway. Having found that the causation of the vehicle leaving the road was a road surface defect, we see no useful purpose in considering any role the pile of concrete might have played in increasing the damages. Consequently, we will not discuss it further and make no finding whatsoever concerning it. Any role the concrete played in increasing plaintiff’s damages in personal injuries and property damages is immaterial as the damages will be fixed at what they are regardless of any aggravating factor attributable to the pile of broken concrete.
SUMMARY CONCERNING LIABILITY
For the reasons given above the trial court’s finding of liability on the part of the State should be affirmed. We note at this point that the State urges as a general proposition that the plaintiffs’ evidence rests upon circumstantial evidence. We do not consider this to be correct. We have noted that there was evidence before the Court from which it could reasonably conclude that the cause in fact of the accident was in a defective road surface because it contained large areas of asphalt material lacking any aggregate which resulted in the road surface being unreasonably slick and slippery when wet. The trial judge heard the testimony and made the obligatory credibility evaluations. He gave his stated factual conclusions. Under the law of manifest error we would not be justified in substituting our judgment for the trial judge’s conclusions of fact.
QUANTUM OF DAMAGES
In its assignments of error the State urges that the trial court erred in that its award of general damages to Mrs. Howell was excessive. No argument in appellees’ brief is addressed to this issue. The plaintiffs answered the appeal and asked that the general damage award of $65,000 to Clovis 0. Howell be increased to $100,000.
Mrs. Howell suffered only one significant injury, a shoulder injury. She also sustained a bruise to the right lower abdomen. Her treating physician, Dr. Louis D. Perdue, testified Mrs. Howell sustained a complete separation of the acromioclavicu-lar joint. She underwent surgery for correction of the condition. Two days elapsed after the accident before the surgery could be performed. She wore her arm in a sling for approximately two months at which time she could begin to exercise her shoulder to some degree. A year later Mrs. Howell was still complaining of “a persistent intermittent aggravating aching discomfort in the shoulder.” Dr. Perdue estimated that Mrs. Howell would suffer a permanent five percent impairment of the arm as a result of her injury. The trial court found that Mrs. Howell was still suffering pain at the time of trial in August of 1983. The trial court also concluded that Mrs. Howell could not do her customary housework. Mrs. Howell was not examined by any physicians on behalf of the State. Dr. Ronald K. Tischler had treated the Howell family at various times. He could not give any significant testimony as *638 his records had recently burned in a fire. He was apparently called by plaintiffs to avoid any implication or permissible assumption that by not calling him his testimony would have been adverse to them.
On the basis of the resume given above we cannot say that the trial court’s assessment of general damages was excessive. It may be that the award was on the high side, but under the established standards for appellate review of quantum awards, we would not be justified in reducing the award. As to plaintiffs’ answer to the appeal, the award appears to be adequate and we would not be justified in increasing it. Consequently, the award for general damages is affirmed. Neither party complained of the award for special damages.
For the foregoing reasons the judgment of the trial court is affirmed. The costs of this appeal are assessed to the State of Louisiana, through the Department of Transportation and Development.
AFFIRMED.
FORET, J., dissents and assigns reasons.
GUIDRY, J., dissents for the reasons assigned by FORET, J.
APPENDIX TO OPINION IN JERRELL G. HOWELL, ET AL YS. STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION, ET AL DOCKET NO. 84-76
The following specifications of error are set forth in the brief submitted on behalf of the State of Louisiana, Department of Transportation and Development:
SPECIFICATIONS OF ERROR
I.The court manifestly erred in its factual finding that the condition of the roadway was a proximate cause of the accident, and in failing to find that the negligence of Clovis 0. Howell was the sole, proximate cause of the accident,
II.The trial court manifestly erred in failing to find that Clovis 0. Howell was guilty of contributory negligence barring her recovery.
III. The trial court manifestly erred in improperly applying the principals of law as set forth in the jurisprudence of the State of Louisiana regarding the standard of care required of a motorist under similar factual situations as those present at bar.
IV. The court manifestly erred in that it improperly applied the principals of law as stated in the jurisprudence with regard to the negligence and liability of the Department of Transportation and Development and its duty to the motoring public.
V.The trial court was manifestly erroneous in its granting judgment for the plaintiff and against the Department of Transportation and Development in the absence of positive, competent proof that there was a causal connection between a highway condition and the loss of control of the vehicle being operated by Clovis 0. Howell.
VI.The trial court manifestly erred as a matter of law in concluding that the Department of Transportation and Development has a duty to protect negligent drivers from the consequences of their own negligence and for failing to find that Clovis 0. Howell was in fact negligent.
VII.The court manifestly erred in awarding excessive damages to Clovis 0. Howell for the alleged injuries sustained in her accident.