319 So.2d 831 (1975)
Jack COLEMAN et al., Plaintiffs-Appellees,
v.
Harold B. HOUP et al., Defendants-Appellants.
No. 5159.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1975.
Seale, Smith & Phelps by John W. Swanner, Baton Rouge, for defendants-appellants Broadview Station.
Robert S. Cooper, Jr., and Robert E. Tillery, Baton Rouge, for plaintiffs-appellees.
William J. Doran, Jr., Joseph R. Raggio, Baton Rouge, for defendant-appellee.
Before DOMENGEAUX, WATSON and HALL, JJ.
HALL, Judge.
This case and three companion cases arise out of an automobile-truck accident which occurred in the early morning of January 7, 1971, on a bridge known as the "spillway bridge" on Louisiana Highway 71 about ten miles north of Krotz Springs in St. Landry Parish.
Earnest S. Garrison, Sr. and six of his fellow workers were proceeding southerly on Highway 71 in Garrison's automobile on their way to work. There was ice on the bridge and while crossing it Garrison lost control of his automobile. The automobile struck the guard rails and came to rest near the south end of the bridge at approximately a forty-five degree angle blocking the southbound lane of the highway. Garrison and his passengers disembarked and attempted to push the automobile off the bridge without success.
A few minutes after the Garrison automobile had come to a stop on the bridge a tractor/trailer unit owned by C & H Transportation Company, driven by Harold B. Houp and insured by Commercial Standard Insurance Company, approached the bridge from the north. As the truck reached the bridge the driver lost control, the truck jackknifed and struck three of Garrison's passengers. All three died as a result of injuries received in the accident. The truck tractor overturned onto and damaged the bridge railing.
The surviving widows and children of the persons killed instituted wrongful death *832 actions against Houp, C & H and Commercial Standard. The defendants denied negligence and filed alternative third party demands for indemnity and/or contribution against the Louisiana Department of Highways alleging negligence on the part of the Highway Department in failing to provide proper safeguards and warnings as to the icy condition of the bridge surface.
More than a year after the accident, the Highway Department was joined as an additional defendant by the original plaintiffs in the wrongful death actions. The Department filed exceptions of prescription and answered denying liability.
The Department also filed suit against the drivers of both vehicles, the owner of the truck and its liability insurer for property damage done to the bridge railing. Garrison filed a reconventional demand against the Department for personal injuries and property damage alleged to have been sustained by him in the accident.
All suits were consolidated for trial on the merits. After trial, the district court rendered judgments in favor of the original plaintiffs against the original defendants, holding the accident was caused solely by the negligence of the truck driver. The third party demands of the original defendants against the Highway Department were dismissed with prejudice. Judgment was rendered in favor of the Department of Highways against Houp, C & H and Commercial Standard for property damage. The reconventional demand of Garrison against the Department was dismissed with prejudice.
The appeals before this court are by Houp, C & H and Commercial Standard, from the district court's dismissal of their third party demands against the Department of Highways and from the judgment against them for property damage in favor of the Department of Highways. The original defendants did not appeal from the adverse judgments against them in favor of the original plaintiffs.
On appeal appellants contend that the dangerous, icy condition of the spillway bridge was the sole cause, or at least a contributing cause, of the accident and resulting fatalities. They further contend that the Department of Highways was negligent in failing to warn or alert oncoming motorists and in failing to place suitable abrasives on the surface of the bridge or otherwise take steps designed to alleviate the icy condition, and that this negligence was a legal cause of the accident.
There is no real dispute as to the law applicable to these cases. Both parties cite Martin v. State Department of Highways, 175 So.2d 441 (La.App. 4th Cir. 1965) which stated the general duty of the Highway Department as follows:
"Generally, it is the duty of the highway department to construct and maintain the highways, and this includes bridges which are a part thereof, reasonably safe for a traveler himself exercising ordinary care; a highway will be deemed safe within these requirements if it may be negotiated successfully by all but the very reckless and careless drivers, there being no obligation to construct and maintain highways so as to insure the safety of such drivers."
Both parties also cite Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3d Cir. 1963) for the well-settled proposition that in order to hold the Department liable for an accident caused by an unsafe or hazardous condition it must be shown that the Department had prior notice, either actual or constructive, of the dangerous condition and sufficient opportunity to remedy same or at least to alert and warn the motoring public of its presence, and failed to do so.
In holding the Department was free from negligence, the district court in written reasons for judgment stated:
"The main plaintiffs make no serious effort to show fault in the Department *833 of Highways and practically concede its absence of negligence. The Houp defendants strenuously urge the department's failure to apply surfacing to the bridge and to display ice warning signs as constituting fault contributing to the accident.
"The accident was reported to the state police by the Krotz Springs police department at approximately 6:45. The evidence is unclear as to by whom and how long after the accident word got to the Krotz Springs police department. The accident was in an isolated area of the parish about 10 miles from Krotz Springs. It is unlikely that a car passed by immediately after the accident. Thus, it could be 30 minutes or more between the accident and the report to the state police.
"Also, the Garrison group left Lemoyne about 5:30 and traveled 13.4 miles to the accident site. Averaging thirty miles per hour, they would have reached the accident site shortly before 6 o'clock. It was not more than 10 or 15 minutes later that the accident occurred. Accordingly, from this calculation also it is reasonable to fix the accident time at between 6:00 and 6:15.
"At 4:45 a. m. or shortly thereafter notice was given to Marcantel, the highway maintenance superintendent for the area in question, that the Opelousas overpass was iced over. Even if it is assumed that the highway department is obligated to immediately proceed to surface all bridges in the area upon receipt of notice of any bridge icing over, it is clear that it would not have been possible to have applied surfacing to the bridge in question before the accident. There had to be notice to the crews; the crews had to get to the highway barn, load up the abrasives and travel to the bridge in question. All this would have been done under extremely adverse weather conditions. There was just not that much time involved.
"Counsel cites no cases and this court is aware of none which specifically require a highway department to have crews constantly alerted to cover iced bridges or that require a constant surveillance of weather conditions to anticipate the need for such action. The weather reports of the previous day and into the early part of the night do not indicate such a likelihood of bridges icing over as to require that the department have an overnight crew standing by. Mr. Marcantel testified that the weather forecasts for the previous day were not such as to indicate the necessity for an overnight watch of weather conditions if such is ever so.
"With regard to the department's failure to display the "Ice on Bridge' sign, the court doubts that if Marcantel had immediately notified Stagg (the foreman in charge of the bridge in question) to proceed to display the warning sign he could have done so prior to the accident. However, Marcantel had no notice of that bridge icing. The evidence showed that other higher bridges (the Opelousas overpass being one of these) in the area iced sooner and that the spillway bridge was not particularly subject to icing. The highway department is not obligated to proceed to display ice warning signs with the same urgency that firemen answer an alarm or an ambulance driver responds to an emergency call.
"It is highly questionable that the display of the `Ice on Bridge' sign would have prevented the accident. Houp had every reason to suspect that ice was on the bridge and to travel accordingly. He certainly knew that conditions for traveling were so adverse that he ought to have proceeded onto the bridge with extreme slowness and alertness of outlook. It is doubtful whether an ice warning sign would have altered that situation. Accordingly, the court cannot conclude that the highway department was at fault or that such fault was a contributing factor in the accident."
*834 The issue in this case narrows down to whether the Highway Department, after receiving notice of icing conditions in the area, failed to take reasonable steps within a reasonable period of time to remedy the situation or to warn the motoring public and, if so, whether such failure was a legal cause of the accident.
Garrison and his passengers left Lemoyne at about 5:30 a. m. and drove approximately thirteen miles to the site of the accident. The Garrison automobile was stopped for several minutes before the truck came along. The accident was reported to the State Police Headquarters by a call from the Krotz Springs Police Department at 6:45 a. m. A state trooper was dispatched and arrived at the scene at about 7:10. He testified the persons present at the scene said the accident happened about 6:30. The trial court fixed the time of the accident as between 6:00 and 6:15, and it certainly happened no later than 6:30.
The radio operator at Troop K Headquarters of the State Police testified he received a call at 4:46 a. m. from Lt. Guillory advising that there was ice on the overpass bridge east of Opelousas on U.S. Highway 190. The radio operator then called Allen Marcantel, Highway Superintendent for the Department of Highways, who lives in Opelousas and whose territory includes all of St. Landry Parish.
Marcantel testified he received a call from the State Police at about 5:00 in the morning at his home advising that it was freezing in Alexandria and that he should get his crews out to the bridges in the area as soon as he could. Marcantel dressed, went to his office and called his foremen who in turn called their men. Marcantel testified he did not call the foreman in charge of the spillway bridge, Charles Stagg, because he figured Stagg would probably be on his way to the Beggs Unit out of which he worked and where he calls in every morning around 7:00 a. m. Marcantel himself proceeded on to the Krotz Springs bridge which is usually the first to freeze over and where there have been the most accidents in the past. Stagg called in about 6:45 or 7:00 and was instructed to go to the spillway bridge and stand by. Stagg got to the spillway bridge at about 7:30 or a little later and after the accident had occurred.
Marcantel testified the usual procedure of the Highway Department is to send crews out to the bridges when the temperature gets to about thirty-six degrees and it is raining and getting colder, indicating freezing conditions. The crews unfold the "Ice on Bridge" signs, set out temporary signs closer to the bridge warning of ice on the bridge, set out a smudge-pot type flare, and spread C-3 lightweight aggregate, an abrasive substance like sand, over the bridge. During the night and after office hours the Highway Department depends on the State Police to give them notice of anticipated freezing conditions.
During the day preceding the night of the accident the weather was clear and freezing conditions were not anticipated. The trucks were, therefore, not loaded and ready for action as they sometimes are when freezing conditions are anticipated. The warning signs and flares were located at the various units, including the Beggs Unit, but the abrasive material had to come out of Opelousas. The procedure on the morning of the accident was for the crews to go to the bridges, open the "Ice on Bridge" signs, put out the temporary signs and flares and wait for the truck with the C-3 light aggregate.
Stagg testified that had he been called it would have taken him at least one hour to get to the spillway bridge.
Considering all these circumstances, it appears that Marcantel acted with reasonable dispatch and took reasonable steps under the circumstances. He did not call Stagg because he thought he was probably already on the way to work and would be calling in within a relatively short period of time. The nature of the communication *835 from the State Police advising of ice on an overpass in Opelousas was not such as to indicate the necessity for extremely drastic action to meet a dire emergency, particularly as to the spillway bridge which had iced over on only one or two occasions in the six previous years.
Even if Marcantel had called Stagg earlier it is doubtful that Stagg and his crew could have arrived at the spillway bridge in time to take precautionary measures prior to the time the accident happened. Assuming Marcantel could have gotten in touch with Stagg by 5:00 a. m. and the accident happened between 6:00 and 6:30 a. m., it would have taken split-second timing in order for Stagg and his crew to have arrived at the scene in time to take precautionary measures which might have prevented the accident. It would be unreasonable to hold the Department to such split-second efforts under the circumstances and it would be highly speculative to find that a call by Marcantel to Stagg at his home would have prevented the accident. We hold, first of all, that there was no negligence or substandard conduct on the part of the Highway Department. Secondly, we hold that it was not proven that what the Highway Department employees did or did not do was a cause in fact of the accident.
These conclusions are in accord with those of the trial judge, who correctly resolved the factual and legal issues presented.
For the reasons assigned, the judgment of the district court is affirmed at appellants' cost.
Affirmed.