489 So.2d 1038 (1986)
James E. NIX, et al.
v.
Norman S. BRASLY, et al.
No. CA 85 0362.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
*1040 John L. Avant, Baton Rouge, for James E. Nix and Debbs N. Nelson 1st appellants-plaintiffs.
W. Arthur Abercrombie, Jr., Baton Rouge, for Norman S. Brasly, Electronics Transport, Inc. and Travelers Ins. Co. appellees-defendants.
Geralyn Garvey, New Orleans, for Nat. Union Fire Ins. Co. Intervenor-2nd appellant.
Ben Vega, Jr., Donaldsonville, for State of La. through Dept. of Public Safety appellee-defendant.
William J. Doran, Jr., Baton Rouge, for State of La., Dept. of Transp. and Development appellee-defendant.
Before LOTTINGER, EDWARDS and CRAIN, JJ.
EDWARDS, Judge.
This is a suit for personal injuries filed by plaintiffs, James E. Nix and Debbs N. Nelson, against the State of Louisiana through the Departments of Transportation and Development (DOTD) and Public Safety (DPS).[1] A petition of intervention was filed by National Union Fire Insurance Company of Pittsburg, Pennsylvania seeking recovery for worker's compensation benefits and medical benefits paid to plaintiff James Nix. Plaintiffs and intervenor now appeal from a decision in favor of defendants.

FACTS
The personal injuries for which plaintiffs seek recovery were sustained in a vehicular collision which occurred on Interstate 10 (I-10) at the U.S. Hwy. 61 overpass bridge at approximately 6:00 to 6:15 A.M. on January 12, 1982. At this time a major ice storm was passing through the area and had caused the bridge to ice over. The point in time at which this first occurred was not clearly established, but, it is not disputed the bridge was iced over as plaintiffs approached it at approximately 6:15 A.M.
At this time plaintiffs were on their way to work, driving west on I-10 toward Baton Rouge. Nix was driving while Nelson slept in the front passenger seat. As they began ascending the bridge in the right lane, they encountered ice and Nix lost control of the vehicle, which spun around and came to rest parallel to and almost touching the left guardrail. In this position the vehicle was facing east against the flow of oncoming traffic and blocked the small left emergency lane and part of the left traffic lane. The vehicle sustained only minor damages.
Plaintiffs briefly discussed their situation and decided to move the car into the right emergency lane facing west with the flow of traffic. After allowing an oncoming car to pass, Nix attempted to make a U-turn but again lost control and slid on the ice, ending up perpendicular to the right guardrail *1041 blocking both lanes of traffic. Nix intended to back-up and then drive forward into the right emergency lane facing west, but as he looked over his shoulder, he saw a large truck approaching. Nix immediately exited the vehicle, but Nelson was unable to do so before the truck struck the car. The impact pushed the car forward striking Nix. Both plaintiffs suffered personal injuries as a result of the collision. Nelson's injuries were relatively minor, but Nix sustained a serious injury to his hip.
Norman Brasly, the driver of the truck which struck plaintiffs' vehicle, testified he attempted to slow down and maneuver around plaintiffs' vehicle, but when he applied his brakes the truck began sliding on ice and he lost control. Brasly stated that plaintiffs' vehicle blocked both lanes of traffic prior to the collision.
Both Nix and Brasly stated they did not see a sign warning of ice on the bridge as they approached it. However, it was never positively verified whether such a sign was displayed. In addition, all of the parties involved testified no sand, aggregate or other abrasive material had been spread on the bridge at the time of the accident.

ACTION OF TRIAL COURT
In their suit plaintiffs contend their personal injuries resulted from the negligence of DPS and DOTD, which consisted of: 1) failing to warn motorists of the presence of ice on the bridge; and 2) failing to place sand, aggregate or other abrasive materials on the bridge to provide traction and prevent skidding. The trial court concluded DPS was not negligent since it was not shown it had any notice of the hazardous condition of the bridge. The court further concluded DOTD was also not liable under a theory of negligence because its conduct or its failure to act as complained of by plaintiffs was not a cause-in-fact of the accident. The court found the accident was caused solely by plaintiffs' own actions in maneuvering their vehicle in such a manner as to block both lanes of traffic.

LAW
In order to recover under the theory of negligence, a plaintiff must prove: 1) the conduct complained of was a cause-in-fact of the accident; 2) the defendant had a duty to protect plaintiff against the harm complained of; 3) defendant breached this duty; and, 4) plaintiff was harmed by this breach of duty. Payne v. Louisiana Dept. of Transp., Etc., 424 So.2d 324 (La. App. 1st Cir.1982). A defendant's conduct is considered to be a cause-in-fact of harm to another if but for his conduct the harm would not have occurred, or if his conduct is a substantial factor in bringing about the harm. Bickham v. Goings, 460 So.2d 646 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1246 (La.1985). A determination as to whether certain conduct is a cause-in-fact is a factual finding which is entitled to great weight on appeal, and will not be reversed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In the present case, we agree with the trial court's conclusion that the activities of plaintiffs in voluntarily maneuvering their car into a position which exposed them to an increased risk of harm was a cause-in-fact of their accident. However, we disagree this conduct was the sole cause-in-fact of the accident. There can be more than one cause-in-fact of an accident as long as each cause bears a proximate relation to the harm which occurs and it is substantial in nature. Bodoin v. Daigle, 452 So.2d 828 (La.App.3d Cir.1984), writ denied, 458 So.2d 485 (La.1984). We have no difficulty whatsoever in finding the absence of aggregate or another abrasive material to provide traction was a substantial factor in bringing about the accident. Had such a substance been present, it is unlikely either driver would have lost control of their vehicles and the accident would have been avoided. We find the trial court committed manifest error in concluding the failure to spread aggregate on the bridge was not one of the causes-in-fact of the accident.
*1042 However, we find no manifest error in the trial court's conclusion that the conduct of DOTD with regard to warning of ice on the bridge was not a cause-in-fact of the accident. First, it was not clearly established whether or not the ice warning sign was open at the time of the accident. Nix and Brasly testified they did not see such a sign, but they did not affirmatively state such a sign was not present. It may be appropriate to observe at this point that Nix and Brasly also testified they did not see each other's vehicles until a collision was imminent, even though both had their lights on, it was not foggy and the road approaching the bridge was straight.
Further, whether the warning sign was opened or closed may not have made any difference in the outcome of this incident. Nix admitted he had encountered ice, which caused his car to "fishtail," on the bridge immediately prior to the one in question. In fact, he slowed down to 25 m.p.h. as he approached the bridge over Hwy. 61 because he thought there was a good possibility it had ice on it. There is no reason to believe Nix would have acted any differently if he had seen an "Ice on Bridge" sign displayed, since he was already aware of the danger and the need to proceed with caution. See Carpenter v. Travelers Ins. Co., 402 So.2d 282, 284 (La.App.3d Cir. 1981); Coleman v. Houp, 319 So.2d 831, 833 (La.App.3d Cir.1975). Under these circumstances we can not say the conclusion of the trial court was manifest error.
Having determined the failure to spread aggregate was one of the causes-in-fact of plaintiffs' injuries, we must now determine whether the other elements essential for recovery under a negligence theory are present. With respect to the duty owed by defendants to plaintiffs, it is well established the State owes a duty to motorists to maintain highways in a reasonably safe condition and to remedy conditions creating an unreasonable risk of harm. U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780 (La.1976); Naylor v. La. Dept. of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 427 So.2d 439 (La.1983), 429 So.2d 127 and 134 (La.1983). However, before the State can be held liable for an accident caused by a condition that creates an unreasonable risk of harm, it must be shown the State had actual or constructive notice of the condition and failed to remedy it within a reasonable length of time. Id. In Mckinnie v. Dept. of Transp. & Development, 426 So.2d 344 (La.App.2d Cir.1983), writ denied, 432 So.2d 266 (La.1983), the Court stated at p. 350:
"... [E]ven though it is a matter of general knowledge that in the wintertime, bridges are likely to `ice over' when the temperature gets below freezing, the Department is not required to take action to alleviate such icing conditions or to warn of such conditions unless such a condition was reasonably expected at a particular time, and the Department has sufficient notice to take the necessary steps to alleviate the condition or warn the motoring public. * * * The rule resulting is that the plaintiff must prove that the Department had good reason to believe that the icing conditions were going to occur and a sufficient opportunity to correct them or warn of their presence." (Citation omitted.)
There was absolutely no evidence presented showing DPS had either actual or constructive notice of the hazardous condition of the bridge prior to the accident. Accordingly, our inquiry need proceed no further with respect to it; the trial court was correct in dismissing plaintiffs' suit against DPS.
Plaintiffs, however, strenuously argue that DOTD had actual and/or constructive notice prior to plaintiffs' accident of the icy condition of the bridge.
Mr. W.L. Landon, District 61 Maintenance Engineer, for DOTD has the authority and responsibility to close bridges and roads once they become unsafe to motorists. Mr. Landon testified he was aware of the approaching ice storm, but had been advised by the National Weather Service in Baton Rouge at approximately 5:00 to 6:00 P.M. on January 11th that the earliest time *1043 icing conditions would occur in the area was the afternoon of January 12th. He stated he instructed his staff to prepare for the storm by fueling all of the trucks and loading them with aggregate, a lightweight clay material used to provide traction on ice. Upon receiving a telephone call at 3:00 A.M. on January 12th advising him that icing conditions were occurring on roads in the area, Landon immediately traveled to his office and began calling his workers out. He stated he did not receive any specific information as to ice on the Hwy. 61 bridge prior to the accident in question.
Mr. Carroll Phillips, District 61 Highway Maintenance Supervisor for DOTD, testified he also received a telephone call at approximately 3:00 A.M. advising him of icing conditions on the interstate. He immediately went out to check on the situation, although he did not go near the bridge over Hwy. 61. At one point he encountered slushy ice on a small bridge, which was located ten miles from the I-10 bridge over Hwy. 61. Upon arriving at his office Phillips also began calling out workers.
He testified no trucks were loaded with aggregate at this time and he did not recall having received instructions from Mr. Landon to load them on the previous afternoon. Since enough workers were not present to load the trucks, Mr. Phillips sent those present out to open ice warning signs on the interstate. At that time DOTD used ice warning signs which were designed in such a manner that flaps had to be physically opened to display the warning. Mr. Phillips stated the warning sign at the Hwy. 61 bridge on I-10 was "almost definitely" open by 6:15 A.M., but he did not know of his own personal knowledge whether it was.
Mr. Phillips' testimony was conflicting on one important point. When questioned as to whether he had had any specific information regarding ice on the bridge prior to the accident, he indicated he did not. However, at a later point in his testimony, he indicated that the presence of ice on the bridge had been verified by 5:30 A.M. on January 12th.
For the foregoing reasons, we find DOTD did not have sufficient time between receiving actual notice of ice on the bridge and the occurrence of the accident to remedy the situation. The record indicates the earliest time at which it was probable DOTD had actual notice of ice on the bridge was 5:30 A.M. on January 12th. In order to remedy this situation it was necessary for DOTD employees to assemble a crew, load a truck with aggregate and travel to the bridge to begin spreading it.[2] The trip would have taken at least 10 to 15 minutes, perhaps more considering the adverse weather conditions. It would have been difficult if not impossible for this all to have been accomplished in 30 to 45 minutes. See Coleman, supra. It must be borne in mind that this particular bridge was not the only trouble spot DOTD had to contend with on the morning of January 12th. Icing problems were widespread throughout the area and DOTD was working under extremely adverse conditions. Under these circumstances, we conclude DOTD did not have a reasonable opportunity to remedy the hazardous situation at the Hwy. 61 bridge prior to the accident in question. Accordingly, we find no negligence on the part of DOTD with respect to this accident.
Plaintiffs, however, argue DOTD should be held to have had constructive notice of ice on the bridge for several reasons. First, they allege it was negligent for DOTD not to have monitored its weather teletype machine, which is located at its *1044 headquarters in Baton Rouge, throughout the night of January 11th and early morning hours of January 12th. They argue that if DOTD had done so, it would have received weather bulletins issued during these hours alerting it to the possibility of icing conditions earlier than originally anticipated and could have had highway crews standing by.
In addressing a similar issue the court in Coleman v. Houp, supra, at p. 833, stated:
"Counsel cites no cases and this court is aware of none which specifically require a highway department to have crews constantly alerted to cover iced bridges or that require a constant surveillance of weather conditions to anticipate the need for such action. The weather reports of the previous day and into the early part of the night do not indicate such a likelihood of bridges icing over as to require that the department have an overnight crew standing by.... that the weather forecasts for the previous day were not such as to indicate the necessity for an overnight watch of weather conditions if such is ever so." (Emphasis added.)
The testimony in the present case indicated the weather teletype at DOTD headquarters was turned off on January 11th at 4:15 P.M., the end of normal working hours. The testimony of a DOTD official indicated this teletype is monitored around the clock only when DOTD is aware of a critical situation in advance. As of approximately 5:00 to 6:00 P.M. on January 11th, the information received by DOTD from the National Weather Service indicated icing conditions were not anticipated until the following afternoon. Thus, the situation was not considered such as to necessitate an overnight watch of weather conditions. In view of the information available to DOTD at that time, we are unable to find this conclusion unreasonable or negligent.
Plaintiffs maintain that Mr. Phillips, a DOTD employee, knew or should have known of ice on the I-10 bridge at Hwy. 61 as of approximately 3:38 A.M. on January 12th since he encountered ice on a bridge on La. 30 at this time. We are unable to agree. The fact there was ice on a bridge on La. 30, which was approximately ten miles north of the Hwy. 61 bridge, does not necessitate a conclusion there was ice on the latter bridge. The record indicates there are many factors which may affect when or if a bridge will ice over, including the location of the bridge, whether it spans a waterway, whether it is elevated and, if so, its height, and the amount of traffic traveling over it. Considering the multitude of variables present, we find DOTD can not be charged with constructive notice of ice on the I-10 bridge on the basis argued by plaintiffs.
For the foregoing reasons we affirm the judgment of the trial court. All costs of appeal are to be paid by appellants.
AFFIRMED.
NOTES
[1] Plaintiffs also named as defendants, Norman S. Brasly, Electronics Transport, Inc., The Travelers Insurance Company and Pelican Transportation Company, Inc. However, prior to trial plaintiffs settled with and released Brasly, Electronics Transport, Inc. and The Travelers Insurance Company, specifically reserving their rights only against DPS and DOTD.
[2] Plaintiffs argue the trucks should have been loaded on the afternoon of January 11th in accordance with Mr. Landon's instructions. It should be noted aggregate can not be placed on roadways in advance of icing because it will simply be blown away by traffic. Thus, without deciding the issue of whether such instructions were given (Mr. Phillips recalled no such instructions), we find it was not negligent for the trucks not to have been loaded on the afternoon of January 11th. Since icing conditions were not anticipated until the afternoon of January 12th, it was reasonable to assume there would be sufficient time to load the trucks during the morning on that date before icing occurred.