537 So.2d 303 (1988)
Warren B. CARLIN
v.
Johnny BLANCHARD, et al.
No. CA 87 1350.
Court of Appeal of Louisiana, First Circuit.
December 20, 1988.
*305 William C. Dupont, Dupont, Dupont and Dupont, Plaquemine, for plaintiffWarren B. Carlin.
Edward A. Songy, Plaquemine, for defendantJohnny Blachard, et al.
Ernest L. Johnson, Baton Rouge, for defendants, third party Leon Epps.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
This is a personal injury suit in which the plaintiff seeks damages for personal injuries sustained from a gunshot wound to his foot.

FACTS
On July 13, 1984, plaintiff, Warren Carlin, was employed as a detective by Freddie Pitre, the Sheriff of Iberville Parish. On that date, an armed robbery occurred at the Pelican Shoppette in Iberville Parish. While responding to the robbery call in an unmarked unit plaintiff observed a car and driver who met the description of the robbery suspect proceeding on a gravel road located between the levee and the Mississippi River. Plaintiff radioed in this information and began pursuing the suspect with his grill light and dashboard siren on. He was advised that other units were en route and would set up a roadblock to capture the suspect; plaintiff was told to continue pursuing the suspect toward the roadblock. Ralph Stassi, Chief Criminal Deputy Sheriff, and Detective Johnny Blanchard, both of the Iberville Parish Sheriff's Office, assisted in setting up the roadblock and were each armed with shotguns. When the suspect, later identified as Leon Epps, observed the roadblock, he applied his brakes about one hundred yards away from the roadblock, causing his car to slide sideways, raising a large cloud of dust before coming to a stop. Plaintiff immediately exited his vehicle and ordered Epps to surrender. According to plaintiff's testimony, Epps then tried to back his vehicle over plaintiff, who fired a warning shot with his pistol into the ground. Epps then stopped and began getting out of his car, preparing to surrender. However, upon having heard the warning shot, Stassi and Blanchard began firing their shotguns toward the person they saw standing near Epps' vehicle, which was still enveloped in a cloud of dust. Epps got back in his car and drove toward the roadblock, which he by-passed by going over the levee. During the gunfire by Stassi and Blanchard, plaintiff was shot in his right foot. Epps was not injured and was apprehended at another roadblock.
Subsequently, plaintiff filed suit against Sheriff Pitre, Chief Criminal Deputy Stassi and Detective Blanchard alleging negligent injury; his employment with the Sheriff's office was terminated shortly thereafter.[1] Defendants responded to this suit by filing a peremptory exception of no cause and no right of action on the basis that plaintiff's exclusive remedy was workers' compensation. The trial court overruled these exceptions. Defendants also filed a third-party demand against Epps seeking indemnity from him in the event they were held liable to plaintiff on the principal demand.
Following a jury trial, a special verdict was rendered in favor of plaintiff and against defendants finding Stassi forty-five percent at fault; Blanchard, thirty percent at fault; and plaintiff, twenty-five percent at fault for his injuries. The following items of damages were awarded: past pain and suffering $5,000.00; future pain and suffering $5,000.00; permanent or partial disability $40,000.00; scarring $5,000.00; future impairment of income $10,000.00; and, past and future medical expenses $20,000.00. After reducing the damages by *306 plaintiff's percentage of fault, the trial court rendered judgment for plaintiff in the amount of $63,750.00. On defendants' third-party demand, the jury found that fault among the defendants and Epps should be apportioned forty-two percent each to Stassi and Blanchard and sixteen percent to Epps. In accordance therewith, the trial court rendered judgment against Epps in favor of defendants/third-party plaintiffs for $10,200.00. Epps filed a devolutive appeal from this judgment.
Subsequent to the rendition of judgment, defendants filed a motion for new trial on the basis of alleged juror misconduct. This motion was denied by the trial court after a hearing. Defendants thereafter filed a suspensive appeal with this court.

ISSUES
The following issues were raised by defendants, Pitre, Stassi and Blanchard, in their appeal.
1. Whether plaintiff was precluded from a tort suit against defendants on the basis that worker's compensation was his exclusive remedy?
2. Whether defendants established jury misconduct sufficient to warrant a new trial under CCP art. 1972(3)?
3. Whether defendants should be relieved of any liability to plaintiff under the "sudden emergency doctrine"?
4. Whether the conduct of defendants, Stassi and Blanchard, was a cause in fact of plaintiff's injuries?
5. Whether the jury erred in awarding only twenty-five percent fault to plaintiff on the principal demand and only sixteen percent fault to Epps on defendants' third-party demand?
6. Whether the jury erred in awarding an excessive amount of damages to plaintiff?
In his appeal, third-party defendant, Epps, raises only the following issue.
7. Whether the jury erred in assigning any fault to him?

ISSUE ONE
Defendants contend that "[a] sheriff's deputy injured by another deputy during the course and scope of his employment has no claim against the fellow deputy or sheriff in tort, but his exclusive remedy is worker's compensation." They argue that the trial court erred in denying their exceptions of no right and no cause of action which were based on this contention.
Sheriff's deputies are public officials who are generally excluded from coverage under the workers' compensation statute. La.R.S. 23:1034; Parker v. Cappel, 500 So.2d 771 (La.1987). However, under subsection (C) of R.S. 23:1034, a political subdivision may, at its own discretion and using its own funds, elect to provide workers' compensation to deputy sheriffs. Parker, supra.
In this case, defendants maintain plaintiff was paid "compensation" for several months by the sheriff's department and that "[t]his action by the sheriff is a clear manifestation of the sheriff's intention to provide worker's compensation to plaintiff in accordance with the provisions of subsection C of R.S. 23:1034." This argument is without merit.
There is no evidence in the record that Sheriff Pitre either had obtained workers' compensation coverage for his deputies from an insurer or established a plan for self-insurance. Rather, the payments made to plaintiff, which defendants refer to as "compensation", were actually voluntary payments of plaintiff's full salary, although plaintiff was unable to work during certain periods for which he was paid. Since the record does not establish that Iberville Parish sheriff deputies had workers' compensation coverage at the time in question, plaintiff is not precluded from suing his fellow deputies or the sheriff in tort. The trial court correctly overruled defendants' exceptions.

ISSUE TWO
After the trial of this matter, the jury foreman contacted the judge and informed him of certain statements made by jurors during their deliberations, which the foreman *307 thought might indicate prejudice against the sheriff's office. Subsequently, defendants filed a motion for new trial on the ground that "the jury's decision was based upon reasons outside the scope of the trial and extraneous to the legal and factional(sic) issues presented and was of such a nature that impartial justice has not been done." The trial court held an evidentiary hearing on defendants' motion at which ten of the original twelve jurors testified. Plaintiff objected to the jurors being allowed to testify to impeach their own verdict. The trial court ultimately denied defendants' motion for a new trial.
La.Code Civ.P. art. 1972 provides in pertinent part that:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
...
(3) When the jury ... has behaved improperly so that impartial justice has not been done.
Not every instance of juror misconduct necessitates the granting of a new trial. Bossier v. Desoto General Hosp., 442 So.2d 485 (La.App. 2d Cir.1983), writ denied, 443 So.2d 1122 (1984). A new trial is mandated only upon a showing of juror misconduct of such a grievous nature as to preclude the impartial administration of justice. Id.
In this case, the jurors' testimony revealed that during deliberations, one juror indicated displeasure with the manner in which Iberville Parish Sheriff deputies had arrested his son in an earlier, unrelated matter and made a statement to the effect that those in the sheriff's office thought they could do whatever they liked and could handle people however they wished. Another juror commented that she did not believe that the handling of a DWI case against her nephew had been fair.
We pretermit the issue of whether the trial court was correct in permitting the jurors to testify at the evidentiary hearing on defendants' motion for new trial, since even considering this testimony, no juror misconduct of such a grievous nature as to preclude the impartial administration of justice was shown. The jurors' testimony indicated that they were not influenced by the statements in question and reached their verdict on the basis of their evaluation of the witnesses and the evidence presented. We also note that the jury was not polled when the verdict was rendered, and therefore, we are unable to determine how the jurors that defendants claim were prejudiced voted on the jury interrogatories. It is possible that these parties even voted in defendants' favor.
For these reasons, we find no error in the trial court's denial of defendants' motion for new trial.[2]

ISSUE THREE
Defendants argue that plaintiff's negligent act of firing a warning shot in contravention of departmental policy, created an emergency situation which relieves them of any liability to plaintiff. We disagree.
In Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 389 (1972), the Supreme Court explained the sudden emergency doctrine as follows:
One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impeding danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence.
We do not believe the application of this doctrine is appropriate under the facts of this case. Stassi and Blanchard had advance warning of Epps' approach and, in fact, had time to set up the roadblock, *308 procure their weapons, position themselves and stand waiting for several minutes before Epps' vehicle came into sight. Defendants are trained, experienced law enforcement officers, who were aware Epps was armed and should have anticipated and been prepared for the possibility that gunfire might occur. Further, they were in continuous radio contact with plaintiff and advised him to continue his pursuit of Epps toward the roadblock. Accordingly, Stassi and Blanchard should have been aware of the likelihood that plaintiff would be in close proximity to the area into which they fired, which they were unable to see clearly because of dust. The fact that they were armed with shotguns, which are inaccurate at long range and have pellets which spread out over distance to cover a wide area, exacerbates the imprudence of their conduct. Under these circumstances, it was unreasonable for Stassi and Blanchard to open fire upon an unidentified person. They could easily have taken cover and waited for the dust cloud to subside before responding with gunfire. Further, Epps was preparing to surrender to plaintiff when defendants opened fire, and if they had not done so, the volatilty of the situation would have been defused at that point.
For these reasons and, considering the record as a whole, we find no manifest error in the jury's conclusion that defendants were not completely relieved of liability to plaintiff under the sudden emergency doctrine.

ISSUE FOUR
Defendants argue that their conduct was not a cause in fact of plaintiff's injuries. They maintain that the conduct of Epps and plaintiff, in firing a warning shot, were the sole causes in fact of plaintiff's injuries. We reach a contrary conclusion.
Conduct is a cause in fact of harm to another if, but for the conduct, the harm would not have occurred, or if the conduct is a substantial factor in bringing about the harm. Thomas v. Missouri Pacific R. Co., 466 So.2d 1280, 1285 (La.1985); Bickham v. Goings, 460 So.2d 646, 649 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1246 (1985). There can be more than one cause in fact of harm to a plaintiff, as long as each cause bears a proximate relation to the harm and is substantial in nature. Nix v. Brasly, 489 So.2d 1038, 1041 (La.App. 1st Cir.1986). A jury's determination as to whether certain conduct is a cause in fact of a plaintiff's injuries is a factual finding which is entitled to great weight on appeal, and will not be reversed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Nix v. Brasly, supra.
In this case, it is so clear as to require little elaboration that Stassi's and Blanchard's conduct was a cause in fact of plaintiff's injuries. But for their conduct of firing in plaintiff's direction, he would not have sustained a gunshot wound to his foot. This conduct was unquestionably a cause in fact of the harm suffered by plaintiff. The fact that plaintiff's and Epps' conduct may also have been causes in fact of plaintiff's injuries does not alter this conclusion.

ISSUE FIVE
Defendants argue the jury erred in not assigning a greater percentage of fault to plaintiff and also in not assigning 100 percent fault to Epps on their third-party demand.
In assessing fault, a jury should consider both the nature of each party's conduct and the extent of the causal relation between the conduct and the plaintiff's injuries. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). A jury's factual findings are entitled to great weight and can not be disturbed on appeal in the absence of manifest error. Arceneaux v. Domingue, supra. This standard of review is applicable to a jury's determinations as to each party's percentage of fault since such determinations are factual in nature. Files v. State, DOTD, 484 So.2d 746, 749 (La.App. 1st Cir.1986).
In this case, the jury assigned sixteen percent fault to Epps, a relatively low percentage. This assessment was probably based on the fact that, although he initiated *309 the sequence of events leading to plaintiff's injury, Epps was attempting to peacefully surrender to plaintiff when Stassi and Blanchard opened fire. Further, Epps at no point fired his weapon at plaintiff, Stassi or Blanchard.
With respect to plaintiff, who was assigned twenty-five percentage fault, the jury obviously considered the risk he created by firing a warning shot into the ground was less than the risk of harm created by Stassi's and Blanchard's conduct. This conclusion is supported by the record since Stassi's and Blanchard's conduct in opening fire with shotguns, which are inaccurate at long range, at a human target they were unable to see clearly created a much greater risk of harm to others than plaintiff's conduct.
While we may have been inclined to assign different percentages of fault to plaintiff and Epps than the jury did, the proper query is whether the percentages of fault assigned by the jury were manifestly erroneous. After carefully reviewing the record, we find no manifest error in the percentages of fault assigned to plaintiff and Epps by the jury.

ISSUE SIX
Defendants argue that the jury awards to plaintiff of $40,000.00 for permanent disability and $10,000.00 for future impairment of income were excessive and should be reduced.
A jury is given much discretion in fixing the amount of damages due. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). This determination will not be disturbed on appeal unless the jury clearly abused its much discretion. The question presented upon appellate review is not whether a different amount might have been more appropriate, but whether the amount awarded by the jury can reasonably be supported by the evidence and justifiable inferences from that evidence. Id.
In the present case, the evidence establishes that plaintiff has a twenty percent disability of his right foot as a result of his injury. Before he was injured, plaintiff, who was in his late twenties at the time, was quite active physically. The disability of his foot has caused a change in his lifestyle. He is no longer able to jog or play basketball, activities he formerly enjoyed, without experiencing pain. Considering the evidence presented, although we feel the jury's award for permanent disability was generous, we believe it is supported by the record and is within the range of the jury's much discretion.
However, we agree with defendants' contention that the award of $10,000.00 for future impairment of plaintiff's earning capacity was an abuse of the jury's discretion. Plaintiff introduced no evidence to support this item of damages. Although plaintiff suffered a twenty percent disability of his right foot, he did not establish that this disability diminished his employment opportunities in any manner. The only evidence supporting plaintiff's claim was his testimony that he could no longer perform his duties as a detective and that he was unable to drive, stand or walk for long distances or periods of time. However, plaintiff's former treating physician, Dr. Thomas Campanella, testified that he placed no employment restrictions on plaintiff. Nor is there any evidence that plaintiff has even attempted to obtain other employment. An award for future impairment of income is inherently speculative in nature, and in this case, plaintiff simply has not carried his burden of proving that his injury will impair his future earnings. Accordingly, this item of damages must be deleted from the judgment in plaintiff's favor.

ISSUE SEVEN
In his appeal, Epps argues that the jury erred in assigning any fault to him on defendants' third-party demand. He contends that the injury to plaintiff was not within the scope of any duty he owed to plaintiff and that "[his] alleged intentional act of committing the robbery is too far removed from a simple negligent act to be foreseen." We disagree.
While the exact circumstances may not have been foreseeable, we believe the possibility *310 that a law enforcement officer might be injured as a result of the sequence of events set in motion by the commission of an armed robbery was clearly within the scope of Epps' duty not to commit such an act. Further, Epps' conduct was a cause in fact of plaintiff's injury, since it was unquestionably a substantial factor in bringing about the injury. See, Thomas, supra. Accordingly, we find no error in the jury's obvious conclusion that Epps breached a duty he owed to plaintiff and that this breach was a cause in fact of plaintiff's injury.
We find no merit in Epps' contentions.

DECREE
For the above reasons, the judgment of the lower court is amended to delete the $10,000.00 award made for impairment of plaintiff's future income. The judgment is affirmed in all other respects. Defendants are to pay appeal costs in the amount of $200.00.
AMENDED AND, AS AMENDED, AFFIRMED.
CARTER, J., concurs.
NOTES
[1] Plaintiff also filed a wrongful termination suit against Sheriff Pitre, but this claim was settled out-of-court prior to trial of the instant matter.
[2] In response to defendants' argument that a new trial should have been granted, plaintiff points out that defendants' motion for new trial did not comply with La.Code Civ.P. art. 1975, in that it did not set out the grounds upon which it was based or include a verified affidavit of the allegations of fact upon which it was based. However, we need do not reach this issue since, for other reasons, we affirm the trial court's denial of a new trial.