# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-511

CECELIE MCGASKEY, ET VIR.

VERSUS

NATIONAL AUTOMOTIVE INSURANCE CO., ET AL.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 75,234 "A"
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Sr.,\*
Judges.

**AFFIRMED**.

George A. Flournoy
Flournoy & Doggett (APLC)
Post Office Box 1270
Alexandria, Louisiana 71309
(318) 487-9858
COUNSEL FOR PLAINTIFFS/APPELLANTS:
     Cecelie McGaskey and Elijah McGaskey

_____

\*Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana
Supreme Court as Judge Pro Tempore.

**Ronald J. Fiorenza**
**Andrew E. Schaffer**
**Special Assistants Attorney General**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel, A.C.**
**934 Third Street, Suite 800**
**Post Office Drawer 1791**
**Alexandria, Louisiana 71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**State of Louisiana, Department of Transportation**
**and Development**

**GENOVESE, Judge.**

This is a personal injury bifurcated case arising out of a four-vehicle, icy bridge automobile accident. Plaintiffs appeal the finding of the jury and the trial court that the State of Louisiana, Department of Transportation and Development (DOTD), had no constructive notice of the icy conditions on the bridge upon which the accident occurred, and thus was not liable. In the bifurcated loss of consortium claim, the trial court reached the same conclusion. For the following reasons, we affirm.

### FACTS

The accident giving rise to the instant litigation occurred on the Grand Ecore bridge near Natchitoches, Louisiana, in the early morning hours of November 30, 2001. The record indicates that a Mr. Louis Llorens encountered ice on the eastbound lane of the bridge, which caused him to lose control of his vehicle and hit the bridge railing near the westbound lane of travel before coming to a stop in the eastbound lane. Then, Plaintiff, Mrs. Cecelie McGaskey, approached the bridge behind Mr. Llorens and, when confronted with the situation, was unsuccessful in her effort to avoid the Llorens vehicle and collided with it. The third vehicle to approach, driven by Mr. Amos Millage, collided with the McGaskey vehicle. Then, Mr. Bobby Walker, while driving an "18-wheeler" truck with trailer, came upon the accidents and was able to avoid the vehicles, but wrecked into the bridge railing near the westbound lane of travel.

Mrs. McGaskey instituted this litigation naming as one of the Defendants, the DOTD. Her spouse, Mr. Elijah McGaskey, asserted a claim for his loss of consortium. Mr. and Mrs. McGaskeys' claims were bifurcated for trial purposes. Mrs. McGaskey's personal injury claim was presented to the jury; Mr. McGaskey's

1

loss of consortium claim was presented to the judge.  Relative to Mrs. McGaskey's claim, the jury returned a verdict in favor of the DOTD, finding that the DOTD had neither actual nor constructive notice of the ice on the bridge.  Likewise, the trial court judge ruled that the DOTD bore no liability to Mrs. McGaskey; consequently, Mr. McGaskey's loss of consortium claim was denied.  The McGaskeys filed a Motion for Judgment Not Withstanding the Verdict, or, In the Alternative, for a New Trial, which the trial court denied.  It is from these judgments that the McGaskeys appeal.

## ISSUES

The following issues[1] are presented for our review:

1. Did the fact finder err, as a matter of law, in its legal conclusion that [the] DOTD did not have constructive notice of the icy conditions on the bridge?

2. Did [Plaintiffs] prove by a preponderance [of the evidence] (*the jury did not reach this issue on the verdict form*) that DOTD failed to take corrective action within a reasonable period of time after it had constructive notice of the ice on the bridge?

## LAW AND DISCUSSION

We note at the outset that the McGaskeys assert that the triers of fact erred, "as a matter of law, in [their] legal conclusion that [the] DOTD did not have constructive notice of the icy conditions on the bridge[.]"  However, this particular issue is not one of legal error.  Rather, constructive notice is a question of fact which is subject to the clearly wrong/manifestly erroneous standard of review. *Brown v. La. Indem. Co.*, 97-1344 (La. 3/4/98), 707 So.2d 1240*; Williams v. Square League Corp., Inc.*, 03-1158

---

[1]In failing to identify any assignments of error, Plaintiffs' appellate brief does not comply with Uniform Rules—Courts of Appeal, Rule 1–3, which states that a court of appeal "will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise."  In the interest of justice, despite this deficiency, we will review the merits of the issues raised by Plaintiffs.

(La.App. 1 Cir. 6/25/04), 885 So.2d 1166.

In order to establish liability on the part of the DOTD, the McGaskeys bore the burden of proving that: (1) the bridge was in the care, custody, and control of the DOTD; (2) the bridge was defective in that it posed an unreasonable risk of harm; (3) the DOTD had actual or constructive notice of the defect; (4) the DOTD had an opportunity to remedy the defect and failed to do so; and (5) the McGaskeys were damaged as a result of the accident. *Greer v. State, Dep't. of Transp. & Dev.*, 06-417 (La.App. 3 Cir. 10/4/06), 941 So.2d 141, *writ denied*, 06-2650 (La. 1/8/07), 948 So.2d 128; *Cole v. State, Dep't of Transp. & Dev.*, 99-912 (La.App. 3 Cir. 12/22/99) 755 So.2d 315, *writ denied*, 00-199 (La. 4/7/00), 759 So.2d 766.  In the instant matter, the parties did not dispute the presence of the requisite elements of custody and causation.  The absence of actual notice on the part of the DOTD of the defect, i.e., the icy condition of the bridge, was also not disputed.  The McGaskeys, in brief, state that "[*i*]*t was agreed that defendant had no actual* notice. . . ."  Thus, the narrow issue before this court on appeal is whether or not the record supports the fact finders' respective determinations that the DOTD did not have constructive notice that ice had formed on the Grand Ecore bridge prior to the subject accident.  We find that there is ample evidence and a reasonable factual basis in the record to support these determinations.

Given the absence of actual notice, we must examine the record to determine whether the triers of fact were manifestly erroneous in concluding that the facts in the instant matter did not infer actual knowledge[2] on the part of the DOTD of the icy

---

[2]Louisiana Revised Statutes 9:2800 provides that "[c]onstructive notice shall mean the existence of facts which infer actual knowledge."

conditions on the Grand Encore bridge. For the reasons which follow, we agree with the fact finders' determinations.

The McGaskeys contend that the sole and uncontradicted evidence of the time at which the ice began to form on the bridge was the testimony given by Mr. Ernest Ethridge, an expert in the fields of meteorology, hydrology, and climatology. Mr. Ethridge calculated the temperatures on the Grand Ecore bridge beginning on the afternoon of November 29, 2001, through the morning of November 30, 2001. Mr. Ethridge opined that, at 10:00 p.m. on the 29th, the temperature began to decrease steadily. It was his opinion that, at approximately 2:00 a.m. on the 30th, the temperature had decreased to 32 degrees. Mr. Ethridge testified that, when the temperature reached 32 degrees, it is "possible some patches of ice could have started to form [on the bridge]." The McGaskeys rely upon Mr. Ethridge's opinion to conclude that there was ice on the Grand Encore bridge at 2:00 a.m.; thus, they conclude that the DOTD did have constructive notice since the condition existed for such a period of time that it would have been discovered had the DOTD exercised reasonable care.

The DOTD argues that the expert opinion of Mr. Ethridge "was based upon information and data that he gathered from various sources post-accident." Additionally, it is noted that although Mr. Ethridge reached the conclusion as to the "possibility" of icy conditions on the bridge after a "[v]ery few hours[,]" he admitted that he "stud[ied] for hours later" before coming to a "more probable conclusion." There were several factors considered by Mr. Ethridge in reaching his ultimate conclusion including the height of the bridge, the temperature of the soil, the amount of prior rainfall, the existence of bluffs which surrounded the bridge, and the presence

4

of a polar mass. We agree with the DOTD's assertion that this "hindsight determination" is not relevant to what was known to the DOTD in the hours just before the accident occurred. What was known to Mr. Ethridge and the conclusion that he was able to reach post-accident given time and his expert knowledge was not the information the DOTD had prior to the accident.

Based on the evidence, the information which was available to the DOTD on November 29, 2001, included the weather information which was published in two newspapers. The *Shreveport Times* reported on November 29, 2001, that the low for Natchitoches would be 34 degrees and that "[s]ome sleet mixed with cold rain [was] expected in Northwest Louisiana in the next few days with temperatures expected in the upper 30's dipping near freezing Friday before warming up." The *Alexandria Town Talk* predicted the low for the Alexandria area to be 35 degrees. There is no evidence in the record of any weather forecast predicting conditions which would result in ice forming on the bridges in Natchitoches Parish in the early morning hours of November 30, 2001. Additionally, the National Weather Service had not issued a weather bulletin advising that ice was going to form on the bridge.

The DOTD was not notified in any other manner that ice was likely to form on the bridge prior to the subject accident. Based upon the weather predictions, the DOTD crew was instructed to arrive for work at 5:00 a.m. on November 30th. Additionally, at no time before the occurrence of the accident was the DOTD informed that a dangerous condition on the bridge had arisen. Sergeant Carl Taylor, Lieutenant Douglas Rachal, and Lieutenant Timothy Key, with the Natchitoches Parish Sheriff's Department, all testified that there was no report of a call regarding icy conditions on the Grand Ecore bridge before the accident. They further testified

5

that, had such a call been placed, the standard procedure was for the sheriff's department to notify the DOTD. The record also contains the stipulation of counsel that there had been no calls to the Louisiana State Police reporting that there was ice on the Grand Ecore bridge; and, thus, there was no call from the state police to the DOTD informing it of icy conditions of the bridge.

We find the record of these proceedings fully supports the conclusion that the DOTD did not receive any reports or constructive notice of ice on the bridge prior to the subject accident. The unrefuted testimony was that there had not been any 911 calls to the Natchitoches Parish Sheriff's Office reporting such conditions on November 29th or 30th. Likewise, neither the Louisiana State Police nor the Natchitoches Parish Sheriff's Office were aware of icy conditions on the bridge prior to the occurrence of the accident at issue in this case, and, consequently, neither reported same to the DOTD.

Although the McGaskeys assert that, given the weather predictions which they contend provided "sufficient advance notice . . . of the "possibility of weather capable of producing icy bridge conditions[,]" the DOTD had a "duty *to monitor weather conditions and inspect bridges for ice*." We disagree.

First, there was no "advance notice" as the McGaskey's contend. As discussed above, the only information available on November 29th was the weather predictions as reported in the two newspapers. Secondly, the "possibility" of icy conditions does not equate to constructive notice thereof. Finally, this court has held that the DOTD is not required to inspect its roads and bridges in anticipation of the formation of ice absent weather predictions including such. *Luneau v. State, Dep't of Transp. & Dev.*, 03-1064 (La.App. 3 Cir. 6/2/04), 879 So.2d 266.

6

In *Luneau*, 879 So.2d at 268, this court stated the following relative to claims against the DOTD:

> The State owes a duty to the motoring public to maintain highways in a reasonably safe condition and remedy conditions which make a roadway unsafe. The duty of the State to maintain highways in a reasonably safe condition arises from knowledge of an unsafe condition of the highway. Before the State may be held liable for an accident caused by a hazardous or dangerous condition of a highway, it must be shown that the State had actual or constructive notice of the condition and a sufficient opportunity to remedy the situation or at least warn motorists of its presence, and failed to do so. *Naylor v. Louisiana Department of Public Highways*, 423 So.2d 674 (La.App. 1 Cir.1982), *writ den.*, 427 So.2d 439 (La.1983), *writ den.*, 429 So.2d 127 & 134 (La.1983).
>
> La.R.S. 9:2800 sets forth when a public entity may be held for damages under La.C.C. art. 2317 as follows:
>
>> "A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>>
>> B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
>>
>> C. Constructive notice shall mean the existence of facts which infer actual knowledge."
>
> *Gaspard v. State, Through Dept. of Transp. and Development*, 596 So.2d 336, 338 (La.App. 3 Cir.), *writ denied*, 600 So.2d 664 (La.1992).

In *Luneau*, as in the case at bar, the accident occurred when a driver lost control of a vehicle due to icy conditions on a bridge. In *Luneau*, as in the case at bar, the DOTD asserted that it did not have constructive notice of the icy condition of the roadway within a reasonable amount of time prior to the accident for the condition

7

to be remedied. Admittedly, while discussing the issue of the duty in *Luneau,* this court found that "the trial judge . . . expand[ed] the duty of the DOTD beyond that set out in La.R.S. 9:2800, to a duty to inspect its roads and bridges in anticipation of hazardous conditions." *Id*. at 271. It was the opinion of this court that "the trial court erred in finding that the DOTD had a duty to 'proactively' inspect bridges for ice where there was no advance warning of inclement weather." *Id*. at 272. In the instant matter, we find no merit to the McGaskeys' assertion that the weather predictions gave rise to the obligation of the DOTD to monitor the weather throughout the night and to check for icing on the bridge.

We likewise find the McGaskeys' contention that the DOTD should have had crews out before 5:00 a.m. on November 30th to be without merit. The DOTD was under no obligation to patrol the bridge during the night based on the weather predictions. In *Nix v. Brasly*, 489 So.2d 1038 (La.App. 1 Cir. 1986), plaintiffs were involved in an automobile accident which occurred on an icy bridge in the early morning hours. Notably, in that case, the DOTD was aware of an approaching ice storm. One argument asserted by the plaintiffs in *Nix* was that the "DOTD should [have been] held to have had constructive notice of ice on the bridge for several reasons. First, they [alleged] it was negligent for DOTD not to have monitored its weather teletype machine . . . throughout the night. . . ." *Id.* at 1043. It was plaintiffs' contention that, had the DOTD done so, it would have known that the icy conditions were possible earlier than had been anticipated. The first circuit disagreed, citing the following language of this court in *Coleman v. Houp*, 319 So.2d 831, 833 (La.App. 3 Cir. 1975):

> "Counsel cites no cases and this court is aware of none which specifically require a highway department to have **crews constantly**

8

**alerted to cover iced bridges or that require a constant surveillance of weather conditions to anticipate the need for such action.** The weather reports of the previous day and into the early part of the night do not indicate such a likelihood of bridges icing over as to require that the department have an overnight crew standing by. ... [sic] that the weather forecasts for the previous day were not such as to indicate the necessity for an overnight watch of weather conditions if such is ever so." (Emphasis added.)

*Nix*, 489 So.2d at 1044. Relevant to the court in *Nix* was "the information available to the DOTD at that time." *Id.* (See also *Roberson v. State, Department of Transportation and Development*, 550 So.2d 891, 896, (La.App. 2 Cir.), *writ denied*, 552 So.2d 387 (La.1989), wherein the court stated: "To impose a constant monitoring duty on DOTD would be unreasonable and unrealistic.")

As stated in *McKinnie v. Department of Transportation and Development*, 426 So.2d 344, 350 (La.App. 2 Cir.), *writ denied*, 432 So.2d 266 (La.1983):

> Consequently, even though it is a matter of general knowledge that in the wintertime, bridges are likely to 'ice over' when the temperature gets below freezing, the [DOTD] is not required to take action to alleviate such icing conditions or to warn of such conditions unless such a condition was reasonably expected at a particular time, and the [DOTD] has sufficient notice to take the necessary steps to alleviate the condition or to warn the motoring public. See *Moraus v. State, Department of Transportation*, 396 So.2d 596 (La.App. 3d Cir.1981).

The McGaskeys devote considerable discussion in their brief to this court of evidence which was introduced regarding prior incidents of the Grand Encore bridge icing and of other accidents which occurred on the bridge in icy conditions. However, this evidence does not establish constructive notice on the part of the DOTD. As the court in *McKinnie* opined, we may not "impute notice" to the DOTD based upon the existence of conditions which might have occurred on past occasions. *McKinnie*, 426 So.2d at 350.

In light of our finding that the DOTD did not have constructive notice of the

9

icy conditions on the bridge prior to the subject accident, we need not address the second issue raised by the McGaskeys relative to any failure of the DOTD to take corrective action within a reasonable period of time. Corrective action by the DOTD cannot be taken without notice of the condition to be corrected.

Finally, the McGaskeys assert in brief: "The sign [']Bridge May Ice in Cold Weather['] had been left standing, uncovered, every day of every season of every year since 1982." We note that there was considerable evidence adduced at trial regarding signage and the adequacy thereof at the Grand Encore bridge. However, the jury found that the DOTD did not "fail[] to provide adequate warning that ice may be present on the bridge, and that failure caused or contributed to [P]laintiff's injuries[.]" The trial court judge concluded that "there was no sign that could have been used that would have prevented the accident or reduced the chance of it occurring. Therefore, the signage in place was not defective." This court notes that adequate signage was not raised as an issue by the McGaskeys on appeal. With the exception of the sentence quoted above, this issue was not briefed. Therefore, the issue of inadequate signage is not before this court.

Based upon the evidence in the record before us, we do not find that the triers of fact were manifestly erroneous in concluding that the McGaskeys failed to meet their burden of proving the requisite element of constructive notice under La.R.S. 9:2800. We find that a reasonable factual basis does exist in the record to support the factual determinations of the jury and the trial court judge that the DOTD did not have the requisite constructive notice to support the imposition of liability herein.

**DECREE**

For the foregoing reasons, the judgment of the trial court reflecting the jury

10

verdict and the decision of the trial court is affirmed.  Costs are assessed against the

Plaintiffs, Cecelie McGaskey and Elijah McGaskey.

**AFFIRMED.**

11