# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1064

**LINDA C. LUNEAU AND R. J. LUNEAU**

**VERSUS**

**STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 99-6336-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ARTHUR J. PLANCHARD
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billie Colombaro Woodard and Elizabeth A. Pickett, Arthur J. Planchard[*], Sylvia R. Cooks and Michael G. Sullivan, Judges
.

**REVERSED AND RENDERED.**


**Monique Freeman Rauls**
**P. O. Box 1710**
**Alexandria, LA 71309-1710**
**Counsel for Defendant-Appellant**
      **State of Louisiana**

**John Taylor Bennett**
**Post Office Box 275**
**Marksville, LA 71351**
**Counsel for Plaintiffs-Appellees**
      **Linda C. Luneau and R. J. Luneau**

---

[*] Judge Arthur J. Planchard, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

 Jimmy Roy Faircloth, Jr.
Mark Felipe Vilar
P.O. Box 12730
Alexandria, LA 71315-2730
Counsel for Plaintiffs-Appellees
        Linda C. Luneau and R. J. Luneau

PLANCHARD, Judge

The State of Louisiana through the Department of Transportation and Development (DOTD) appeals the decision of the trial court finding it 100% at fault and awarding damages to the Plaintiffs, Linda C. Luneau and R.J. Luneau in connection with the Ms. Luneau's one vehicle accident which occurred on December 23, 1998.

On that date, at approximately 8:00 a.m., Mrs. Luneau drove her vehicle onto the Moncla Bridge in Avoyelles Parish, Louisiana. She alleges that she lost control of her vehicle due to the icy condition of the bridge, striking both rails of the bridge before coming to a stop. She filed suit against the DOTD alleging that it had actual and constructive notice of the icy, dangerous condition of the bridge and failed to remedy it within a reasonable length of time. The trial judge, who found in favor of the Plaintiffs, pursuant to oral reasons for judgment and awarded damages as follows: "$3,581.83 for the property damages, $175.00 for the wrecker fee, $344.80 for the vehicle rental, $1,500.00 for loss of consortium to R.J. LUNEAU, $7,105.53 for medical bills and $17,500.00 for general damages to LINDA LUNEAU," for a total damage award of $31,703.16.

The DOTD appeals asserting that the trial judge erred in finding that the DOTD had notice and failed to remedy the icy condition of the bridge within a reasonable amount of time, and in finding Linda Luneau to be free from fault.

DUTY

> The State owes a duty to the motoring public to maintain highways in a reasonably safe condition and remedy conditions which make a roadway unsafe. The duty of the State to maintain highways in a reasonably safe condition arises from knowledge of an unsafe condition of the highway. Before the State may be held liable for an accident caused by a hazardous or dangerous condition of a highway, it must be shown that the State had actual or constructive notice of the

2

condition and a sufficient opportunity to remedy the situation or at least warn motorists of its presence, and failed to do so. *Naylor v. Louisiana Department of Public Highways,* 423 So.2d 674 (La.App. 1 Cir.1982), writ den., 427 So.2d 439 (La.1983), writ den., 429 So.2d 127 & 134 (La.1983).

La.R.S. 9:2800 sets forth when a public entity may be held for damages under La.C.C. art. 2317 as follows:

"A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.

B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

C. Constructive notice shall mean the existence of facts which infer actual knowledge."

*Gaspard v. State, Through Dept. of Transp. and Development*, 596 So.2d 336, 338 (La.App. 3 Cir), *writ denied,* 600 So.2d 664 (La.1992).

The DOTD avers that, because it did not have notice of the icy condition within a reasonable amount of time prior to Ms. Luneau's accident to allow it to remedy the situation, it cannot be held liable for the damages she received in that accident.

The trial court, in oral reasons for judgment found that:

The first question is whether or not the State had actual or constructive notice. And then we must ponder whether or not the State should have been checking the bridges given the weather conditions that... I think we can say it has been shown in this courtroom beginning with Ms. Bell's testimony. Again I'm going to go slowly as I review all of the evidence and the testimony.

The reasonable opportunity I'll take that issue first. Reasonable opportunity to remedy the defect. One has to ponder whether the response was slow or not by the State. As everyone said Ms. Bell was at work by 6:30 a.m. At 7:20 a.m. it appeared that Mr. Friels was out on the roads, possibly checking bridges. But the plaintiff has shown there were

two major bridges in the parish, at least those two if not three. And perhaps those should have been checked first. If another person that was available and apparently they weren't. It appears that perhaps there is some way to see if a police agency wasn't notified, the Department of Transportation that a bridge was icy. [sic] And that's why I believe that the State needs to be more proactive in sending out DOTD workers to major bridges in icy conditions and I just don't see where that was done here. I see there was some efforts made, apparently... apparently Mr. Friels happened upon the wreck on Highway 71, so he must have been checking the roads and that's good. But there should have been other persons checking the other major bridges. Simmesport and what's commonly called the Moncla bridge, where this accident occurred. The truck or trucks, at least one truck, the truck which was eventually sent with sand, with salt I'm sorry possibly should have been better prepared, they should have been prepared quicker.

Again it wasn't prepared and it was later until a third party who came that there was ice on the bridge. And then the salt was loaded, that appears to be what happened. And again I just think a more proactive position by the State is in order in these icy conditions. Especially regarding major bridges. A major bridge to me is one that spans over such a length that you get on it and you're on it for more than a half a minute traveling and some (inaudible) rate of speed. But not one of these small bridges where you .. one that comes to mind in Bayou DuLac Bridge which is an extremely small bridge. The length of time that a vehicle passes over it is so little, small. And of course the State will have trouble getting to all of those small bridges and that's more understandable. But the major bridges, I believe this falls into that category, would be checked sooner.

Regarding whether or not the State failed to remedy the defect, if it had a reasonable opportunity, I believe they... I think that one way to remedy the defect is to call the state police and say we've got icy conditions, can you please get troopers out there now. I'm not saying the troopers can do that, but they possibly can. But I didn't have testimony saying we have a protocol we call the sheriff's department, we ask them to get at the foot of the bridge on each side and please turn their lights on, their hazard lights. I mean advise other vehicles.

Does the police department have to do that, no, but I wish there was a protocol from the State that showed that those calls were made, a request was made until a truck could get there. (INAUDIBLE)) review the log and again the 6:30 arrival time and we don't see anything until 7:30 regarding the Moncla bridge when the sheriff's department called. I would rather see the State it would be more appropriate for the State to take a proactive stance and say 6:30 a.m., we've got icy conditions, somebody get out to Simmesport bridge, somebody get out to the Moncla bridge and someone get out to the 71 overpass and check the small bridges on your way.. on your return or on your way to those sites.

4

Regarding the icy conditions there certainly was an icy condition on that bridge that morning. That's been shown. I believe that especially with the deposition corrected as it was, it's clear that the plaintiff lost control on the paved section and the loss continued onto the grated section of the bridge. But again due to ice and the Court believes that certainly ice was the cause of the accident, there's no other conclusion that the Court can draw. It appears from the report that the vehicle veered in a counter clockwise motion into the oncoming lane.

The Court has reviewed the deposition of Mr. Cleary who's testimony is unrefuted. And he discusses the dangers on bridges regarding ice buildup and oil build up. I'm not going to give much weight to the testimony regarding the oil buildup because there was nothing introduced to show us that there was any type of oil slick either on the grating or on the paved section. However, again certainly ice did build up on the bridge on the paved section as well as the grated section apparently. And caused the set of events into motion which led to the accident.

Mr. Cleary testified regarding that the grates on this particular bridge were on there had been a previous check of the bridge, by the State I think just a few months earlier. And perhaps those grates were left worn because the bridge was scheduled to be demolished. And that would be acceptable, it doesn't mean that the State did anything sinister in that fashion. Though it did leave grates that were how can you say slippery when icy and Mr. Cleary his deposition is in the record and it is unrefuted as to his findings. Weather certainly was the cause of this accident. And I cannot access any fault to Ms. Luneau. However this is a slight **...** this is not a huge case as they say, there were no severe injuries. And everyone should be thankful for that. Plaintiff was traveling at approximately 35 miles per hour, I believe she testified, which was a safe speed.

To access liability again, and again I've noted my opinion that the State should be more proactive regarding major bridges when it's an icy condition. It seems as though although Mr. Friels was out there, doing a good job, it seems that the State's position was in effect waiting for someone to call about an icy bridge, or waiting for an accident to happen. And I would rather again to see the State... that's why I mean the State should be more proactive. If an ice storm is called for, the trucks should be loaded down with ice, with the salt, I'm sorry and there should be State crews out checking the major bridges and then the small bridges and then salt to be applied more readily upon their findings, rather than waiting for a third agency to hopefully notice something or an accident. Because we all know an accident can be extremely severe.

Mr. Friels testimony was helpful, he discussed that they do inspect the bridges but sometimes wait for a third party police agency to call. If the weather is cold, then it would be checked and checked by them. And

then he discussed in good detail that the truck may not be loaded the night before because the salt might go to waste, and I understand that. I know that would be a loss to the State financially. If the salt is lost it cannot be used. But I just think that expense outweighs the gravity of what can occur if trucks are not ready and icy conditions do hit. Also, the use of personnel, the cost of that use of personnel to send them out immediately to major bridges is outweighed by the possible gravity of harm that can occur from an accident on , I an icy bridge. So I believe that the salt should be ready for more quick distribution in the case of icy conditions.

He indicated the boxes were put on and he explained how that occurred, possibly the night before. But the boxes were not loaded with salt. Most of the time they were not loaded with salt so,in this case probably they were not loaded with salt until that morning or until the call was I received. He also agreed that an ice glaze on the bridge is dangerous. He has seen ice on this particular bridge about three times in the past. He indicated that a bridge cannot be left unattended and again I believe someone from the State should have been out there checking on it and possibly trying to get a police agency to assist them earlier, before the accident.

There was a lot of discussion about whether or not 40 minutes with the ice glaze is reasonable. Mr. Friels could not answer that question, I would not have allowed that into evidence in a legal context. And it's a good question and it's not an easy question to answer, if I had four hours to deal with it, it would be a very easy decision. If I had ten minutes to deal with, I would have a very easy decision. But forty minutes is not an easy case to resolve. Again that's why I said I don't think that the State is sinister in it's actions. I think the employees are very good employees. And they tried to do the best that they could. But the management protocol needs to look at it, reassess it, make it a little bit better, make it a little bit sharper, make the distribution time of salt a lot quicker. Somebody needs to be out there. Mr. Friels indicated at some point I think that there was an assumption that the sheriff's department was there or that some police agency might share.

He did indicate that you can't put the sand or the salt prior to the icing, and that makes sense. So again it boils down to being proactive, checking the bridges at the appropriate time on icy conditions and having trucks ready to do, loaded and ready to go, when those conditions warrant and I think the conditions warranted that in this particular case. I think the conditions warranted it but apparently it appears that no one was available, at least managing the radio station until 6:30 that morning. Which by then everyone knows the traffic is starting to pick up.

The findings on the issue of liability I will just note that the plaintiff did say to the trooper at the scene that she thought she hit an icy condition or an ice patch, I don't remember the exact wording. But it just

tendered to lend credibility to the cause of this accident which I think we all know the results. Considering the cases cited by the State which I am aware of, the number of bridges, again I think the major bridges can be distinguished. Again this is a matter of management protocol to look at and say let's have a meeting, let's make a list of bridges, this is the ones that we think are major bridges and should be checked first. And there aren't that many major bridges in this parish. Now I understand that DOTD has a regional area but someone in the area can simply look at the parish bridges, someone must do that and I think that's appropriate to ask. The miles to cover this is a large parish, geographically, but if you know where the major bridges are, it doesn't take that long to get to. There are a number of personnel just ... we're not talking, about 40 major bridges, we're just talking about a few. So I don't think the number of personnel is greatly strained by asking them to take a proactive stance in icy conditions.

By this language, the trial judge appears to be expanding the duty of the DOTD beyond that set out in La.R.S. 9:2800, to a duty to inspect its roads and bridges in anticipation of hazardous conditions. The Plaintiffs cite *Moraus v. State, Through Dept. of Transp. & Development*, 396 So.2d 596 (La.App. 3 Cir. 1981) in support of the trial judge's conclusion. However, in that case, the evidence showed that the DOTD had both actual and constructive notice of an impending ice storm as early as 7:00 a.m. on December 4. As a result, the court, in that case, found that the trial court correctly held the DOTD liable for an accident which occurred at 6:45 a.m. on December 5, where the DOTD did not display signs or spread gravel on a bridge until after the occurance of the accident. The situation before us, however, differs from that in *Maraus*. The record herein contains no evidence that the DOTD had advance warning of the ice storm. In light of the provisions of La.R.S. 9:2800, we find that the trial court erred in finding that the DOTD had a duty to "proactively" inspect bridges for ice where there was no advance warning of inclement weather.

In light of this finding, this court will conduct a de novo review of the evidence.

The district judge's apparent misunderstanding of the DOTD's duty was a legal error of such magnitude as to make a *de novo* redetermination of the facts appropriate. "[W]hen the court of appeal

7

finds that a reversible error of law . . . was made in the trial court, it is required, whenever possible, to redetermine the facts *de novo* from the entire record and render a judgment **[97-0293 La. 5]** on the merits." *Ferrell v. Fireman's Fund Insurance Co.,* 94-1252 (La. 2/20/95), 650 So.2d 742, 745 (citing to *Rosell v. ESCO,* 549 So.2d 840 (La.1989)). Here the trial court committed reversible error of law, *inter alia,* by determining that the state had a duty to clear all overhanging obstructions within the highway's right of way. Therefore, the court of appeal's *de novo* review and subsequent judgment on the merits was appropriate.

*Thompson v. State*, 97-0293, pp. 4-5 (La. 10/31/97), 701 So.2d 952, 956.

Therefore, we will examine the evidence to determine whether the DOTD had actual or constructive notice of the dangerous condition and failed to rectify it within a reasonable period of time.

DE NOVO REVIEW

The Plaintiff had the burden of showing that the DOTD had actual or constructive notice of a dangerous condition on the bridge and failed to rectify it within a reasonable amount of time. The trial testimony of the DOTD employees was that it was the practice at the Marksville office to put the office on 12 hour around the clock shifts when an ice storm was predicted. The testimony further showed that the office was not put on 12 hour around the clock shift on either December 22 or 23, 1998. There is nothing of record which would tend to show that an ice storm was predicted for that period. The evidence shows that the DOTD was first notified of ice on the Moncla Bridge at 7:30 a.m. on December 23, when the Avoyelles Parish Sheriff's Office notified Beverly Bell of the DOTD's Marksville Office that there was a glaze of ice on the Moncla Bridge. At that time, she called the foreman and instructed him to send a truck with salt or sand to spread on the bridge. The uncontradicted testimony of Donald Friels, a DOTD foreman in the Marksville office, was that it takes approximately thirty to forty minutes to load the truck with salt, take

8

the normal tailgate off the truck and replace it with a spreader, and get to the Moncla Bridge under the prevailing weather conditions. Given this time frame, and in the absence of prior warning that icy conditions were expected, it would not have been possible for the road crew to reach the accident within the 30 minute time period between the warning and the accident. Although the trial judge made much of the fact that Mr. Friels stated that he was out checking the roads at 7:20 on December 23, there is nothing of record to show the earliest time he could have reached the Moncla Bridge and that it would have made a difference to the time by which a crew could have gotten there with a load of sand. In the absence of any proof that the DOTD had or should have had sufficient advance notice of the icy weather conditions, and although the DOTD received actual notice of an icy condition of the bridge at 7:30 a.m. on December 23, 1998, they did not have a sufficient opportunity to remedy the problem. Additionally, although there is evidence that the metal grating which made up the center span of the bridge was dangerously worn, Mrs. Luneau herself testified that her car went out of control before she reached that portion of the bridge. Nor is there any evidence which shows that the signage at the bridge was inadequate or that different signage could have prevented the accident. In the absence of any testimony from an accident reconstruction expert, we cannot say that the condition of the grating contributed to the accident. Therefore, we find that Mrs. Luneau failed to carry her burden of proving that the accident was caused by a hazardous condition of which the DOTD had actual or constructive notice and failed to remedy in spite of having sufficient opportunity to do so. *See Gaspard*, 596 So.2d 336.

CONCLUSION

For these reasons, the judgment of the trial court is reversed. Judgment is rendered dismissing Plaintiffs' demands at her cost. Costs of this appeal are assessed

9

to the Plaintiffs.

REVERSED AND RENDERED.